THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD J. SUERTH, Defendant-Appellant.

First District (4th Division)    No. 80-292

Opinion filed June 25, 1981.

Julius Lucius Echeles and Frederick F. Cohn, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Casimir J. Bartnik, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Donald J. Suerth, was charged in a four-count information: counts one and two, murder (Ill. Rev. Stat. 1977, ch. 38, pars. 9—1(a)(1), 9—1(a)(2)); count three, armed violence, alleging the underlying offense of murder (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2); and count four, armed violence, alleging that he committed the underlying offense of voluntary manslaughter (Ill. Rev. Stat. 1977, ch. 38, pars. 33A—2, 9—2(a)(1)). The trial court directed a finding of not guilty as to count four and the jury acquitted defendant of the offenses of murder but found him guilty of the lesser included offense of involuntary man-

slaughter and the offense of armed violence. Defendant was sentenced to a period of 6 years on the offense of armed violence and to 2 years on the offense of involuntary manslaughter, the sentences to run concurrently. On appeal, the defendant presents the following issues for review: (1) whether the evidence is sufficient to support a conviction; (2) whether the convictions for involuntary manslaughter and armed violence are invalid because the jury was not properly instructed that an element of the offense of involuntary manslaughter is whether defendant was acting with lawful justification; (3) whether count three can support a conviction founded upon defendant committing involuntary manslaughter while armed; (4) whether the jury was improperly instructed on defendant's right to use deadly force to prevent a forcible felony; (5) whether the court erroneously excluded evidence of facts relevant to the jurors' determination of whether defendant acted reasonably when, after hearing strange noises outside his apartment at 5 a.m., he proceeded downstairs, armed; (6) whether the defendant was denied his constitutional right of confrontation when the trial court prevented him from impeaching the State's occurrence witness with a prior inconsistent statement; (7) whether defendant was denied his constitutional right to a fair trial where the prosecutor displayed a weapon not used in the offense; (8) whether defendant was denied a fair trial where the court prevented him from presenting evidence that immediately after the shooting he called the police and reported that he shot a burglar; and (9) whether the conviction for armed violence must be vacated and whether any sentence can be imposed thereon because the offenses of involuntary manslaughter and armed violence arose from the same act.

Lawrence Stumbaugh testified that he had met Michael Burke, the victim, the summer of 1978 and did not see him again until January 25, 1979. The witness had spent the night "bar-hopping," consuming about 19 beers and smoking one or two marijuana cigarettes. He then went to the Golden Nugget restaurant on the corner of Clark Street at Devon, in Chicago, to drink coffee and eat. Around 4:30 a.m., Burke staggered into the restaurant, drunk, and sat down with Stumbaugh. They were together drinking coffee for about 20 minutes. He asked Burke whether he wanted to smoke some marijuana; Burke answered affirmatively.

The witness stated that when they left the restaurant he was sober "because he had eaten and consumed coffee," but Burke was still intoxicated. He led Burke to an apartment building entrance that was in the same building as the Joker's Pub. (The witness identified defendant and indicated that he had seen him on numerous occasions at the Joker's Pub.) The vestibule of the building was frequented by many people to smoke marijuana. The witness explained that the vestibule is 5 feet square with four stairs leading to a landing which has a second door. Part of the

stairwell to the apartments can be seen from the second door. Due to the illumination from the street lights, the vestibule was well lit. According to the witness, he tried to open the second door but it was locked. Then he proceeded to roll a marijuana cigarette. When he finished, the second door opened and defendant walked toward them. Burke moved to the right of the door to let defendant pass. As defendant was coming toward the door, Stumbaugh was looking for a match. Defendant did not make any statements or sudden movements. When defendant approached Burke, Stumbaugh looked up and saw defendant pull the trigger on his gun, shooting Burke in the face. Defendant held the gun in his left hand. The witness was shocked and stood still. Defendant mumbled something, turned around, and proceeded to walk back up the stairs.

Further testifying, Stumbaugh said he waited until defendant was almost up the stairwell before he left the vestibule area seeking help. He attempted to aid Burke but there was no response. He then ran to the restaurant and requested the waitress to call the police. When the police arrived, he indicated to them where the shooting occurred and explained to them what had happened. He took the police to the building where they saw Burke lying on the floor of the vestibule. Defendant was on the landing inside the first door. The police pulled out their revolvers, told defendant to come out, and placed him under arrest.

Officer Philip Dienethal testified that when he arrived Stumbaugh was standing in the street and waving his hands, indicating where the incident occurred. The officer and his partner followed Stumbaugh to 1555 Devon. They saw the victim lying on the vestibule floor with a large wound on the left side of his face. Then Stumbaugh yelled, "That's the guy that shot him." The officer looked up and observed defendant standing inside near the door. The witness stated he ordered defendant to come out. Thereafter, he searched defendant and his partner handcuffed him.

While his partner stayed with defendant in the squad car, Dienethal stated he went to defendant's apartment. He observed a revolver lying on the table, inspected it, and identified it as a blue steel .44-caliber Charter. It contained four live shells and one expended shell. He also recovered a shotgun from the apartment. The witness identified the gun in court but was prevented by a defense objection from identifying a shotgun held by the prosecutor. On cross-examination, Dienethal testified that defendant gave him permission to enter his apartment.

The defense moved for a mistrial on the grounds that the prosecution permitted the shotgun to remain in the view of the jury. The court denied defendant's motion and ordered that the shotgun be removed from the courtroom.

Officer Richard Thompson, a police evidence technician, testified

that he found an expended bullet at the base of the stairs in the vestibule. It was stipulated that the bullets matched test bullets fired from defendant's gun. It was further stipulated that Burke died of a gunshot wound through the head and that gun powder stipplings found on the body indicated the gun was 6 to 18 inches from the victim's face when it was fired.

The trial court granted the State's motion *in limine* to exclude, as hearsay, testimony relating to the telephone conversation defendant had with the police telling him he had shot a burglar.

Defendant testified that he lived at 1555 West Devon, in Chicago. He is the owner of the building which contains four apartments over a tavern occupying the ground floor. Defendant worked at the tavern until 4 a.m. on January 25, 1979. According to the witness, at 3:30 a.m. he interrupted a fight in the tavern and threw out four customers, one of whom said to him that he would "blow my head off anytime he wanted to." Defendant closed the tavern a few minutes before 4 a.m. and went to his apartment.

Further testifying, defendant said he heard noises in the hallway around 5 a.m. He grabbed his pistol and walked downstairs to investigate. As he went to the stairway, he saw two people standing, facing each other, with a paper bag on the floor between them. Since the door had large glass panels, he could see they were near the first door going out to the vestibule. He opened the door, they made a sudden move, the gun went off, and Burke fell down the stairs. Defendant went upstairs, called the police, and returned to the vestibule to find officers waiting for him. Defendant denied that he intended to shoot Burke or that he intentionally pulled the trigger of the gun.

On cross-examination, defendant testified that he did not recognize Stumbaugh or the deceased when he saw them in the vestibule. He did not think they were burglars but they could have been arsonists. He stated that he opened the door slightly, the two men turned around, and the gun, which was cocked, fired.

Investigator John Gusweiller testified that Lawrence Stumbaugh did not have a reputation for being a law-abiding citizen. The prosecution objected to the investigator's anticipatory testimony that 2 months after the shooting Stumbaugh told him the "Mr. Suerth didn't do anything wrong in that hallway." The trial court sustained the objection and excluded the testimony because defense counsel had failed to lay a foundation for impeachment by confronting Stumbaugh with the statement.

Following the close of evidence, the court granted defendant's motion for a directed verdict on count four (voluntary manslaughter) of the information, since there was no evidence that defendant had acted under the influence of intense passion.

Defendant contends the evidence at trial is insufficient to support a

conviction of involuntary manslaughter because there is no evidence that he acted recklessly.

A person commits involuntary manslaughter when he unintentionally kills an individual without lawful justification if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly. (Ill. Rev. Stat. 1977, ch. 38, par. 9—3(a).) A conviction for involuntary manslaughter requires only reckless conduct which causes death. (*People v. Bembroy* (1972), 4 Ill. App. 3d 522, 525, 281 N.E.2d 389, 392.) Recklessness is defined in our Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 4—6) as follows:

> " §4—6. *Recklessness.* A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

Involuntary manslaughter, therefore, requires no felonious intent or malice. The only mental state required is a conscious disregard of a substantial and unjustifiable risk. Thus, if this record contains evidence of acts by defendant which, if believed by the jury, could reasonably be concluded to be reckless conduct, then we must agree with the decision.

■■ This is a close case and one that relies on the credibility of the witnesses to determine whether defendant when handling the gun in the hallway was reckless when the gun discharged. However, the record, taken as a whole, does present sufficient evidence that defendant acted recklessly.

Defendant contends his convictions for involuntary manslaughter and armed violence are invalid because the jury was not properly instructed that an element of the offense of involuntary manslaughter is whether defendant was acting with lawful justification.

A fundamental concept of our adversary system is that counsel must object to errors at trial. Thus, counsel may waive the right to raise certain errors in later proceedings by failure to object to those errors at trial. Our cases hold that failure to make an objection at trial to an error in jury instructions waives the issue on appeal. (*People v. Roberts* (1979), 75 Ill. 2d 1, 10, 387 N.E.2d 331, 335.) However, there is a limited exception to the waiver rule which is used to correct grave errors or to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed. The waiver rule will not be used to deprive an accused of his constitutional rights of due process. *Roberts,* at 14.

■■ The claimed error in the giving of the instruction in this case does not fall within the purview of the limited exception. Additionally, there was

no error in the failure to include lawful justification as an element of the crime of involuntary manslaughter, since justification is not a necessary element of that offense. *People v. Ortiz* (1978), 65 Ill. App. 3d 525, 532, 382 N.E.2d 303, 308.

Thus, defendant is barred by the procedural default rule of waiver from raising the issue of instruction error.

Defendant contends that count three cannot support a conviction founded upon his committing involuntary manslaughter while armed. Count three charges defendant with armed violence (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2) as follows:

> "[H]e, while armed with a dangerous weapon, to wit: a gun committed a felony defined by Illinois law, to wit: murder, in that he, shot and killed Michael Burke with a gun, created a strong probability of death or great bodily harm to said Michael Burke without lawful justification."

Defendant argues that count three is defective because it fails to allege the elements of either murder or involuntary manslaughter, the underlying offenses. Furthermore, for defendant to be found guilty of involuntary manslaughter, there must be the act and recklessness. This mental state was not alleged in count three.

■■ We find no basis for defendant's argument. Defendant was sufficiently apprised in counts one and two of the charge for murder. Count three adequately stated the elements of armed violence. It was not necessary to repeat the elements of murder or involuntary manslaughter in count three. All three counts informed defendant of the offenses for which he was charged. Furthermore, it is well established in Illinois that involuntary manslaughter is a lesser offense included in the charge of murder. *People v. Arndt* (1972), 50 Ill. 2d 390, 394, 280 N.E.2d 230, 233.

Defendant contends the jury was improperly instructed on his right to use deadly force to prevent a forcible felony. The general rule is that a trial court is under no duty to give instructions which are not requested by either party, and the failure to object to those instructions given waives any error for purposes of review. *People v. Graves* (1978), 61 Ill. App. 3d 732, 742, 378 N.E.2d 293, 300.

In criminal cases, however, substantial defects in instructions are not waived by failure to make timely objections thereof if the interests of justice require it. One who seeks to avoid waiver of defects in instructions for failure to make specific objections has the burden of establishing (a) that the defects in the instruction are substantial and (b) that the giving of the instruction resulted in denying to the defendant a fair trial and justice. *People v. Wright* (1974), 24 Ill. App. 3d 536, 540, 321 N.E.2d 52, 56.

■■ There were no substantial defects in the instruction given. When the language of a single instruction is inaccurate and standing alone might

have misled the jury, others in the series of instructions may explain it, remove the error or render it harmless. (*Wright*, at 541.) The court gave the following instructions: IPI Criminal No. 24.06, which indicated that a person is justified in using deadly force to defend himself if he reasonably believed it was necessary to prevent death or great bodily harm; IPI Criminal No. 24.07, which justified the use of deadly force to prevent violent entry into a dwelling, from which a person fears an assault upon himself or another in the dwelling, or to prevent the commission of a felony in the dwelling; and IPI Criminal No. 14.05, which indicated that a person commits a felony when he remains in a building, without authority, with intent to commit a theft. These instructions taken as a whole properly advised the jury of defendant's right to use deadly force.

Defendant contends the court erroneously excluded evidence of facts relevant to the jurors' determination of whether he acted reasonably when after hearing strange noises outside his apartment at 5 a.m. he proceeded downstairs, armed.

Defendant asserts error occurred when the trial court excluded evidence that for a period of 2 years prior to this incident there had been frequent break-ins, burglaries and arsons in the building and in the vestibule where the deceased was found. Accordingly, the exclusion of such evidence as to why defendant armed himself and used force was prejudicial because it was relevant to the issue of whether he acted reasonably in arming himself.

The law of this State dictates that a man's habitation is one place where he may rest secure in the knowledge that he will not be disturbed by persons coming within, without proper invitation or warrant, and that he may use all of the force apparently necessary to repel an invasion of his home. *People v. Stombaugh* (1972), 52 Ill. 2d 130, 138, 284 N.E.2d 640, 644.

■■ We agree with defendant's contention that error occurred when the trial court improperly excluded evidence concerning prior burglaries in the neighborhood because such evidence would have been relevant to defendant's state of mind. In criminal cases where the intention, motive or belief of the accused is material to the issue, he is allowed to testify directly to that fact and to have the circumstances surrounding the act considered with his testimony. (*People v. Graves* (1978), 61 Ill. App. 3d 732, 741, 378 N.E.2d 293, 300.) In this case, the excluded testimony went directly to the crucial issue of defendant's intent, motive and belief. In support of his theory of the case, defendant had the right to testify as to his state of mind and the circumstances leading to the shooting of Michael Burke.

We find that error occurred when the court erroneously excluded evidence of prior burglaries in the neighborhood.

Defendant next contends he was denied his constitutional right of

confrontation when the trial court prevented him from impeaching the State's occurrence witness with a prior inconsistent statement. Defense counsel wanted to offer testimony that Stumbaugh told Investigator Gusweiller that defendant did nothing wrong in the hallway.

It is well established that a proper foundation must be laid before prior inconsistent statements of a witness are offered for purposes of impeachment. This is accomplished by directing the witness' attention to the time, place of the prior statement, to whom it was made, and the substance of it. The purpose of this rule is to protect the witness against unfair surprise and to provide an opportunity for him to explain the statement with which he is confronted. *People v. Henry* (1970), 47 Ill. 2d 312, 321, 265 N.E.2d 876, 882.

■■ Defendant did not cross-examine Stumbaugh concerning his conversation with Investigator Gusweiller. The trial judge correctly ruled that a proper foundation had not been laid by defense counsel. It was within the discretion of the trial court to permit the recalling of Stumbaugh for the purpose of perfecting the foundation. (*Henry*, at 322.) However, a foundation had not been laid earlier because defense counsel was not aware of the statement during the cross-examination of Stumbaugh. Defense counsel should have been allowed to recall Stumbaugh in order to lay the foundation so that Gusweiller could testify to the statement.

We believe the witness should have been recalled, and defendant suffered manifest prejudice from the trial court's failure to do so.

Defendant contends he was denied his constitutional right to a fair trial when the prosecutor displayed a weapon (shotgun) not used in the offense and then paraded the weapon improperly before the jury.

It is a well-recognized proposition of law that a weapon and testimony concerning a weapon may be admitted into evidence where there is proof to connect it to the defendant and the crime. Case law would indicate that such connection with the crime is shown if a weapon found on the defendant when arrested is suitable for the commission of the crime charged. (*People v. Wade* (1977), 51 Ill. App. 3d 721, 729, 366 N.E.2d 528, 534.) A gun must be sufficiently connected with the defendant and the crime to be relevant evidence. *People v. LeBron* (1980), 83 Ill. App. 3d 598, 603, 404 N.E.2d 540, 543.

■■ In this case, both parties knew that Michael Burke was killed with a .44-caliber pistol. Error occurred when the jurors viewed the shotgun in court and when the prosecutor attempted to exhibit the shotgun to the jurors. The fact that the court sustained the defense's objection to the prosecutor exhibiting the weapon did not cure the error.

We hold that defendant's rights were unduly prejudiced by the State leaving the shotgun in view of the jurors and by the prosecutor attempting to exhibit it to the jurors.

Next, defendant contends he was denied a fair trial when the court

excluded evidence that defendant called the police immediately after the shooting and reported that he shot a burglar. Defendant asserts that this testimony goes to clarify his state of mind.

■■ The exclusion of the statement made by defendant to the police is supported by the general rule that a witness may not testify as to statements he made out of court for the purpose of corroborating his testimony given at the trial relating to the same subject. (*People v. Clark* (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363, 371.) Although such statements may be admissible to rebut a charge of recent fabrication of a witness' testimony (*Clark*, at 389), defendant never testified that he shot a burglar; therefore, the prior statement would have served no purpose.

We hold that defendant's statement was properly excluded by the trial court.

Finally, defendant contends his conviction for armed violence must be vacated. He asserts that no sentence can be imposed for armed violence because the offenses of involuntary manslaughter and armed violence arose from the same act.

■■ The rules announced in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1, and *People v. Sass* (1979), 73 Ill. App. 3d 554, 392 N.E.2d 399, are controlling. Those cases held that where the same physical act constitutes two or more offenses it is proper to enter judgment of conviction and sentence only on the most serious of the offenses. Furthermore, prejudice results to the defendant in those instances where more than one offense is carved from the same physical act. *King*, at 566.

Applying those rules to the facts before us, we hold that defendant's conviction and sentence for armed violence is vacated. Because of the totality of errors enumerated, this case must be reversed.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded for a new trial.

Reversed and remanded.

ROMITI, P. J., and JIGANTI, J., concur.