THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ANTHONY HALL, Defendant-Appellant.

First District (5th Division)   No. 81—974

Opinion filed August 26, 1983.—Rehearing denied October 5, 1983.

Steven Clark and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and Harry John Devereux, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

Following a jury trial, defendant was convicted of attempted rape, armed robbery, and armed violence based upon attempted rape (Ill. Rev. Stat. 1981, ch. 38, pars. 8—4, 18—2, 33A—2) and sentenced to extended concurrent terms of 40 years on the armed robbery and armed-violence convictions. Because the attempted-rape charge was the predicate offense of the armed-violence charge, no sentence was entered on the attempted-rape conviction. On appeal, defendant contends that: (1) he was denied his constitutional right to counsel at the lineup; (2) the trial court abused its discretion in denying defendant's motion *in limine* to exclude the use of his prior rape conviction for impeachment purposes; (3) he was denied his right to a fair trial by the State's improper cross-examination of defense witnesses regarding their prior convictions and also by the State's improper closing argument; (4) his conviction for armed violence must be reversed because (a) the indictment failed to allege the length of the knife blade, an essential element of the offense, (b) the jury was not instructed as to the definition of "dangerous weapon" and also made no findings as to the length of the blade, and (c) the State failed to produce any evidence that the knife blade allegedly used during the underlying offense was in fact a dangerous weapon as defined by the statute; and (5) the trial court erred in not vacating the attempted-rape conviction. For the reasons that follow, we affirm the convictions for armed robbery and armed violence predicated upon attempted rape and vacate the judgment for attempted rape.

Prior to trial, the trial court denied defense counsel's motions *in limine*: to suppress confession, to suppress in-court identification and to prohibit reference to defendant's prior conviction for rape. For purposes of this appeal, only the motions to suppress lineup identification and to prohibit reference to the prior conviction are pertinent. With respect to the lineup, defendant testified that on December 16, 1980, while incarcerated at Cook County jail on an unrelated charge, he was asked to participate in a lineup. Prior to the lineup, defendant was neither advised of his rights nor given permission to contact his attor-

ney.

State's Attorney Irving Miller testified that on December 16, 1980, he was assigned to the felony review unit at Cook County jail. Prior to the lineup in which defendant participated, Miller called the public defender's office and requested that a public defender be present at the lineup. Although Miller had been informed that a particular public defender had previously been assigned to defendant on an unrelated pending charge, Miller made no attempt to find out the name of that public defender. Miller further stated that the indictments charging defendant for the offenses committed against complainant in the case at bar were not filed until after the December 16 lineup.

Thereafter, defense counsel argued his motion *in limine* to prohibit reference to defendant's prior rape conviction on the ground that the resulting prejudice to defendant would far outweigh any probative value. In response, the State argued that the conviction satisfies the prerequisites for admissibility of prior convictions for impeachment purposes set forth in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. When the court denied defendant's motion, defendant presented a supplemental motion requesting the court to confine reference to defendant's prior conviction to "felony," with no mention of rape. The court denied defendant's supplemental motion, stating, "If it is permitted for impeachment purposes, the fact of a conviction of a particular offense is the thing that is permitted."

At trial, complainant testified that on November 24, 1980, approximately 2 or 2:30 p.m., she was walking in the vicinity of Princeton and 62nd Street in Chicago when defendant approached her from behind and asked, "Don't I know you?" Just before entering the viaduct walkway immediately ahead, complainant turned to see if she recognized defendant. When she did not, she shook her head "no" and kept walking. Defendant then ran up beside her and put his arm around her shoulder. When she pushed his hand away, he grabbed her tighter and told her to be cool. At this point, complainant saw a knife in his pants, which she described as follows: "The handle of the knife was in the pants—part of the handle was in the pants and he had his hand over it." The blade "was up about on his stomach." Complainant then stood up and showed the jury the position of the knife, adding that the blade was "big."

Defendant then asked complainant how much money she had. She started to take her wallet out of her purse when a car approached them. Defendant turned her around so that they were headed back toward the vacant lot and told her to put the wallet back in her purse.

With his arm firmly around her, defendant led complainant toward a two-story building located on the other side of the vacant lot. When they walked up the stairs of the building, defendant asked complainant if she had any keys to the building. When she indicated that she did not, defendant pulled some keys out of his own pocket, but never actually attempted to enter the building. While he was reaching for the keys, complainant pulled back, but defendant grabbed her and held her tighter, leading her back down the building stairs and toward the viaduct. Before reaching the viaduct, defendant led complainant into a vacant lot and over to the back stairway of the apartment building. The stairway was concealed from the street by a shed. Complainant gave defendant her money, hoping he would leave. However, defendant forced her to sit on the stairs and told her to pull down her pants. She then noticed that he had an erection. In an effort to stall for time, complainant asked if she could unfasten her jacket first. After doing so, she sat down on the stairs, hoping he would just leave with her money. However, he again told her to take down her pants. By this time, defendant had removed the knife from his pants and was holding it in his hand. After she unfastened her pants, defendant laid the knife on one of the stairs above her. She then told him that she had to stand up in order to pull down her pants. As she stood up, she turned slightly and grabbed for the knife. Defendant grabbed her and they tumbled down the stairs. He then pulled her hand behind her and gained possession of the knife. As a result of the struggle, complainant received knife wounds on her hand and thumb.

Defendant then pushed complainant into a sitting position on the stairs, angrily pushed her face with his hand, and pulled her knit cap down over her eyes. When she pulled the hat back up, he pulled it down again even further. At this point, complainant realized the the farther down the hat was pulled, the better she could see through the stretched knit. As a result, she left it pulled down and was able to get a clear look at defendant. Defendant then told her to pull down her pants. When she did, he ripped open her blouse and started fondling her breasts. Then, while standing in front of her, with the knife in one hand and his penis in the other, defendant attempted to penetrate complainant. However, he lost his erection and failed to complete the attempt.

Defendant then noticed the gold chain around complainant's neck. After she pleaded with him not to take it because of its sentimental value, defendant put on a pair of black leather gloves, trimmed with gold zippers and rings, and started to go through her purse. He took some money, told her to stay where she was, and walked away. Less

than a minute later, he came back, took her gold chain and left.

After dressing and picking up her purse contents, complainant called the police from a nearby mini market. When they arrived, she described her assailant as male with black curly hair, dark brown complexion, 5 feet 11 inches to 6 feet tall, 160 to 170 pounds, wearing brown polyester pants, tan leather jacket and black leather gloves, trimmed with gold zippers and rings. Complainant did not see her assailant in person again until December 16, 1980,[1] when she identified defendant from a six-person lineup. At trial, complainant identified defendant from a photo taken of the December 16 lineup, identified him in the courtroom, and also identified a pair of black leather gloves found next to defendant at the time of his arrest as the gloves that her assailant wore.

Next, Officer Allen McDonald of the Chicago police department testified that on November 25, 1980, while conducting a foot search of a building gangway in the vicinity of 1220 W. 57th Street, Chicago, he discovered defendant concealed under a rear stairwell. Upon searching the stairwell area, McDonald found two black leather gloves, trimmed with gold zippers and rings, and a folding knife with a silver blade and brown handle. McDonald placed defendant under arrest for a charge unrelated to the case at bar and advised him of his rights. At trial, McDonald identified the knife, which he described as having a 4½-inch blade, and the gloves as those items which were found next to defendant at the time of his arrest. On cross-examination, McDonald characterized the knife as a pocketknife. He did not know if any fingerprints were taken from the knife.

Detective Charles Slattery of the Chicago police department then testified that on November 24, 1980, he was assigned to investigate the crime committed against complainant. As a result, he conducted a search of the back stairway area of the two-story apartment building on South Princeton and found three white buttons with thread remnants in the holes.

The State then rested its case and the court denied defendant's motion for a directed verdict.

Next, Clarietha Banks, defendant's fiancee, testified that defendant arrived at her house on the evening of November 23, 1980, and stayed through the next day. On November 24, approximately 1:30 or 2 p.m., Banks and defendant walked to the house of Debra Ashley, a friend, and from there all three walked to 59th and Ashland to do

---

[1] Prior to this date, complainant identified defendant as her assailant from a group of mug shots brought to her home by police officers.

some shopping. Approximately 2:45 p.m., they entered "Utopia," a store which sells clothing and toys. One of the salesmen at Utopia, Jim Clark, waited on defendant and it appeared to Banks that defendant and Clark knew each other. They remained in the store for approximately 30 minutes, after which they continued shopping elsewhere, returning to Banks' apartment approximately 6 p.m. She never saw defendant wearing a tan leather jacket.

When shown the black leather gloves on cross-examination, Banks admitted to buying similar gloves for defendant and that defendant wore the gloves on November 24, 1980. On redirect, Banks stated that she has seen other people wearing similar gloves.

Next, Debra Ashley, acquaintance of defendant for approximately one year, testified that on November 24, 1980, defendant and Banks arrived at her apartment approximately 2:15 p.m., at which time they left to go shopping. They arrived at Utopia approximately 2:45 p.m.

On cross-examination, Ashley admitted that she had been convicted of theft twice, once in 1977 or 1978 and again in 1979. When the State asked if she had not also been convicted of theft in 1980, Ashley said, "No." The court then queried, "What is your answer to that question?" Ashley responded, "I can't recall." The State again asked Ashley if she had not been convicted of theft three times. At this point, defense counsel requested a sidebar during which he informed the court that although there are three arrests for theft on Ashley's record, she received one-year supervision for the first one. Thus, it is not considered a conviction. After continued discussion, the court asked both counsels to stipulate as to two theft convictions. The State agreed to so stipulate. However, defense counsel did not and moved for a mistrial which the court denied. The court then instructed the jury to disregard any implication from the last question asked of the witness by the State. When cross-examination resumed, Ashley stated that she, Banks and defendant stopped looking in the stores around 5:30 or 6 p.m. On redirect, Banks testified that when she was convicted of theft, she had pled guilty.

Jim Clark, salesman at Utopia, next testified that he had previously been convicted of armed robbery on a plea of guilty. On November 24, 1980, defendant arrived at Utopia approximately 2:45 p.m. and stayed for about 25 minutes. Clark has known defendant for approximately 12 years. However, prior to seeing him at Utopia, he had not seen defendant for approximately three years.

On cross-examination, Clark stated that there had been between 20 and 30 customers in Utopia on November 24, 1980. He could not recall on whom he waited immediately before or after waiting on

defendant, nor could he recall at what specific time he waited on other customers. The following colloquy then ensued between Clark and the State regarding Clark's prior convictions:

"STATE: By the way, you say that you have never been convicted for anything other than armed robbery?

CLARK: None other than that; serious crimes, no.

STATE: Well, what unserious crimes have you committed?

CLARK: Traffic violation.

STATE: How about theft?

CLARK: Theft.

STATE: Theft reduced to [sic] burglary; ever been convicted of that?

CLARK: Misdemeanor, yes.

STATE: When was that?

CLARK: I believe I was sixteen, seventeen.

STATE: How about—when were you convicted of the armed robbery?

CLARK: March the 17, 1977.

STATE: So the misdemeanor theft, that is not a serious crime?

DEFENSE: I am going to object.

THE COURT: Sustained as to the form of the question."

On redirect, Clark stated that he remembered the time of day that defendant came into his store because he was about to take his break. When shown the leather gloves, Clark testified that he has sold similar gloves. On recross, Clark stated that he did not remember who his first customer was immediately after returning from his break.

Defense counsel then requested a sidebar at which time he moved for a mistrial on the ground that the State improperly referred to Clark's conviction record. The motion was denied.

After defendant rested his case, Detective Ray Luth of the Chicago police department testified as the State's rebuttal witness. Luth stated that on November 25, 1980, he advised defendant of his rights and spoke with him at the seventh district lockup.

Luth told defendant that he was investigating the case of complainant which involved the crimes of attempted rape and armed robbery committed on the afternoon of November 24, 1980. Defendant told Luth that on that afternoon, he had been seeking employment at a steel mill located 8700 south, and was not in the vicinity of the crime. Luth further stated that defendant never mentioned anything about going shopping that day.

On cross-examination, Luth testified that he and defendant were alone during the interview on November 25. He did not recall if he took notes at the time of the conversation. His actual written report of the statement was not made until December 19, 1980. Luth further admitted that he probably wrote the report from memory. Although Luth had investigated other crimes during the period between November 25 and December 19, he did not think he was mistaken as to the information in his report.

On redirect, Luth testified that defendant was the only person he interviewed in the lockup on November 25, 1980. Further, between November 25 and December 19, defendant was the only person who told Luth that he had been looking for a job in the vicinity of 8700 south, and defendant was the only person Luth had interviewed regarding his whereabouts on November 24, 1980. At a sidebar conference, defense counsel moved for a mistrial on the ground that the State was "sneaking in things" to prejudice the jury. The motion was denied. On recross, Luth admitted that he never asked defendant to put his statement in writing. Thereafter, each side rested its case.

During the subsequent discussion in chambers regarding jury instructions, defense counsel objected to the State's tendered non-IPI instructions regarding armed violence. In this regard, the following colloquy took place:

"STATE: Counsel, what is your objection?

DEFENSE: It was accepted anyway.

STATE: Judge, I'd like to know what counsel's objection is. Perhaps if it's an objection we could accommodate, I would be happy to accommodate him.

COURT: Want to state the basis for your objection so if it can be cured or something, we can endeavor to do it.

DEFENSE: I think it confuses the Jury and creates a problem. That's enough.

COURT: All right, then it will be given over Counsel's objection."

Closing arguments then ensued after which the jury was instructed as to the law. After deliberation, the jury returned with a verdict of guilty of armed robbery, armed violence and attempted rape. The jury was polled. The court then entered judgment on the verdicts and revoked defendant's bond.

Thereafter, at the sentencing hearing, defendant moved, in the alternative, for (1) a judgment notwithstanding the verdict, (2) arrest of judgment, or (3) a new trial. After a thorough discussion on the motions, the court denied all post-trial relief. Following counsels' argu-

ments in aggravation and mitigation, the court applied the extended-term statute and sentenced defendant to concurrent terms of 40 years for armed robbery and armed violence. No sentence was entered for the attempted-rape conviction.

OPINION

I

■ We first address defendant's allegation that the trial court erred when it failed to suppress a pretrial lineup identification made in violation of his constitutional right to counsel.

Specifically, defendant argues that he was placed in a lineup after adversary judicial criminal proceedings had been initiated against him; he was the focus of the lineup for the purposes of the instant prosecution; and he was identified at the lineup without the benefit of counsel.

It has been firmly established that a person's constitutional right to counsel attached only at or after the time adversary judicial proceedings have been initiated against him in the way of a formal charge, preliminary hearing, indictment, information or arraignment. (*Kirby v. Illinois* (1972), 406 U.S. 682, 688-89, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882; *People v. Burbank* (1972), 53 Ill. 2d 261, 271-72, 291 N.E.2d 161.) However, in order for the right to counsel to attach, the judicial proceedings initiated against defendant must have been for the same offense as that for which the lineup was conducted. *People v. Earl* (1979), 78 Ill. App. 3d 188, 397 N.E.2d 97.

In the case at bar, defendant was arrested on an unrelated charge on November 25, 1980. While incarcerated for that charge, defendant was asked to participate in a lineup to be viewed by complainant. As a result, complainant identified defendant as her assailant. Two days later, defendant was indicted for aggravated kidnaping, unlawful restraint,[2] attempted rape, armed violence and armed robbery. The record is clear that judicial proceedings had not been initiated against defendant for the offenses against complainant prior to the lineup. Therefore, we hold that defendant was not entitled to counsel at the December 16, 1980, lineup.

II

■ ■ Defendant next contends that the trial court erroneously

---

[2]The State subsequently moved to *nol pros* the charges for aggravated kidnaping and unlawful restraint.

ruled that his prior conviction for rape was admissible for impeachment purposes, thus preventing defendant from testifying in his own behalf and impeaching the State's rebuttal witness. In particular, defendant argues that this ruling was an abuse of the standard set forth in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, since the prejudicial effect of the admission substantially outweighed any probative value of the conviction. Relying on *People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058 and *People v. Siebert* (1979), 72 Ill. App. 3d 895, 390 N.E.2d 1322, defendant further asserts that rape is a crime of force and is not probative of truth or veracity.

In *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, the supreme court held that a defendant's prior convictions may be admitted for impeachment purposes at the trial court's discretion if (1) the prior offense was punishable by imprisonment in excess of one year or involved dishonesty, and (2) if either the conviction or release from confinement occurred within the preceding 10 years. The *Montgomery* court further stated that once the first two prerequisites are met, the court must then balance the prejudicial effect of the prior conviction on the jury against its probative value. As a guide to the balancing process, the *Montgomery* court suggested that the following factors be considered: (1) nature of the crime; (2) nearness or remoteness of the prior crime; (3) the subsequent career of the person; and (4) whether the crime was similar to the one charged.

In the case at bar, the initial prerequisites of *Montgomery* have been met, *i.e.*, the prior rape conviction was punishable by imprisonment in excess of one year (Ill. Rev. Stat. 1981, ch. 38, par. 11—1); and both the conviction and the release occurred within the preceding 10 years. Therefore, testimony regarding the prior conviction was admissible unless the trial judge determined that its probative value was substantially outweighed by the danger of unfair prejudice. Defendant suggests that because the trial court did not specifically enunciate the underlying reasoning for its determination, it did not engage in any balancing. We cannot agree with this speculative conclusion. The principles of *Montgomery* were thoroughly discussed at the hearing. Thus, it must be assumed that the judge gave appropriate consideration to the relevant factors, and it is not necessary that they appear of record. (*People v. Hovanec* (1979), 76 Ill. App. 3d 401, 421, 394 N.E.2d 1430.) Moreover, application of the salient facts in the record to the balancing guideline articulated in *Montgomery* clearly supports the trial court's decision.

1. *The nature of the crime.* Contrary to defendant's position, we

adopt the rationale of *People v. Medreno* (1981), 99 Ill. App. 3d 449, 425 N.E.2d 588, and concur with its finding that rape is a veracity-related crime, probative of a witness' credibility. As the *Medreno* court stated, "[A] serious felony conviction evinces a disrespect for societal order and thus adversely affects [the defendant's] veracity." (99 Ill. App. 3d 449, 452.) Defendant argues that pursuant to *People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058, a rape offense does not have a direct bearing on a witness' honesty. We find *Wright* unpersuasive on this issue. In *Wright*, defendant was convicted of rape and attempted deviate sexual assault. The case hinged on the credibility of defendant and the complaining witness. The State, over defendant's objections, moved to admit two prior aggravated battery convictions, both less than two years old. The court admitted the prior convictions and defendant was found guilty. In reversing and remanding defendant's conviction, the *Wright* court found that the trial court admitted the prior conviction to show defendant's propensity to engage in violent crimes, and not to impeach his credibility, thereby abusing its discretion. We do not find this to have been the basis for admission of the prior conviction in our case and thus, find *Wright* distinguishable.

2. *Nearness or remoteness.* We view this factor from two distinctly differently perspectives, both of which weigh in favor of probative value. First, the rape offense for which defendant was previously convicted occurred five years before the attempted-rape offense at issue. In our opinion, this five-year gap between offenses sufficiently removes any taint of propensity in the minds of the jurors.

Second, defendant was released from prison in February 1977 and indicted for the crimes against complainant as well as for an unrelated charge less than two years later. It is well established that recency between release and arrest reflects negatively on defendant's likelihood of being rehabilitated, and, in turn, impacts on his credibility. *People v. Medreno* (1981), 99 Ill. App. 3d 449, 453, 425 N.E.2d 588.

3. *Subsequent career of defendant.* Although this factor is irrelevant to the case at bar, we note that the record reveals that at the time of defendant's arrest, he was "AWOL" from the parole office and a warrant had been issued in that regard on December 10, 1980.

4. *Whether the crime was similar to the one charged.* Case law is clear that a prior conviction for a crime which is similar to the crime now charged does not mean it cannot be introduced. (*People v. Fleming* (1980), 91 Ill. App. 3d 99, 109, 413 N.E.2d 1330.) Rather, similarity is simply a factor which the court considers when balancing the

probative value against the prejudicial impact. In light of the forego-
ing discussion, we do not find that the court abused its discretion in
balancing the relevant factors.

■ Defendant further argues that denial of the suppression mo-
tion prevented him from testifying on his own behalf. We find *People
v. Ganter* (1977), 56 Ill. App. 3d 316, 371 N.E.2d 1072, dispositive of
this issue. In *Ganter*, the court observed that the mere fact that a
defendant chooses not to risk the possibility of prejudicial impeach-
ment by prior conviction does not render the trial court's ruling to ad-
mit the prior conviction erroneous. If that were the case, any time a
defendant was unsuccessful in suppressing use of a prior conviction,
he could defeat the trial judge's discretion on appeal. We concur with
the *Ganter* court's observation and further note that defendant's alibi
testimony would have been merely cumulative of testimony given by
the three defense witnesses and, thus, would have had negligible
probative value.

Finally, our determination that the trial court did not abuse its
discretion in denying defendant's motion to exclude admission of
defendant's prior rape conviction for impeachment purposes obviates
the need to discuss defendant's alternative contention that the trial
court erred by failing to limit the prior conviction admission to that of
"felony."

### III

■ Next, defendant argues that he was denied his right to a fair
trial by the State's improper cross-examination of defense witnesses
Debra Ashley and James Clark concerning their prior convictions and
also by the State's improper and prejudicial remarks during closing
argument.

First, defendant cites the exchange between the State and Ashley
during which the State asked her if she had not been convicted of
theft three times instead of just two. At a sidebar conference immedi-
ately following this exchange, defense counsel argued that only two of
the three convictions could be considered by the jury because the wit-
ness had received supervision for the first one. In response, the State
argued that Ashley had violated her supervision when she was ar-
rested for a second theft within a year after the first conviction, and,
thus, the first conviction could be considered. The court, however,
noted that a petition regarding violation of her supervision had never
been filed. Thus, her first conviction could not be raised at this time.
The court then suggested that both counsels enter into a stipulation
regarding Ashley's two theft convictions. The State agreed to do so,

but defense counsel did not. Yet, in his brief, defendant alleges as error the trial court's failure to inform the jury of the stipulation. Defendant's allegation is clearly not supported by the record. Further, we find that the trial court's instruction to the jury following the sidebar conference that they should "disregard any implication from that last question or answer" cured any prejudice that may have resulted from the exchange. *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.

■ Regarding cross-examination of defense witness James Clark, defendant argues that the State's inquiry as to whether Clark's theft conviction had been reduced from burglary transcended the bounds of prosecutorial propriety which limits cross-examination to proof of the prior conviction testified to on direct. We refrain from addressing this allegation on the ground that defendant has waived review by failing to specifically object to the State's inquiry at trial. (*People v. Jackson* (1981), 84 Ill. 2d 350, 358, 418 N.E.2d 739.) Defendant's only objection during that portion of the cross-examination was to the State's comment that Clark apparently did not consider theft to be a serious crime. Moreover, in light of the fact that both Ashley and Clark admitted to their theft convictions, and Clark also admitted to a conviction for armed robbery, we fail to see how the State's remarks regarding those offenses constituted a material factor in defendant's conviction. *People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363.

■ With respect to the State's closing argument, defendant cites the following four alleged errors which he contends "were extremely improper, and successfully designed to play on the jury's prejudice": (1) the State denigrated its burden of proof; (2) the State characterized defense witnesses as liars; (3) the State accused defense counsel of distorting the evidence; and (4) the State referred to defense witness Clark as an "armed robber." After reviewing the record, we find that defendant has waived review of the first three alleged errors by his failure to object to them at trial or to raise them as error in his post-trial motion. (*People v. Jackson* (1981), 84 Ill. 2d 350, 358, 418 N.E.2d 739.) With respect to the State's characterization of defense witness Clark as an "armed robber," we concur with the trial court's ruling that the State's remark was based on the evidence and, therefore, was within the bounds of proper closing argument. *People v. Hine* (1980), 88 Ill. App. 3d 671, 679-80, 410 N.E.2d 1017.

IV

■ Next, defendant argues that his conviction for armed violence must be reversed because: (1) the indictment failed to allege the

length of the knife blade, an essential element of the offense; (2) the jury was not instructed as to the definition of "armed with a dangerous weapon" and made no finding as to the length of the blade; and (3) the knife allegedly used during the underlying offense did not meet the statutory definition of a dangerous weapon.

This portion of defendant's argument concerns the construction and validity of sections 33A—1 and 33A—2 of the Criminal Code of 1961, which provide, respectively:

"Definitions. (a) 'Armed with a dangerous weapon.' A person is considered armed with a dangerous weapon for purposes of this Article, when he carries on or about his person or is otherwise armed with a category I or category II weapon. (b) A category I weapon is a pistol, revolver, rifle, shotgun, spring gun, or any other firearm, sawed-off shotgun, a stun gun or taser as defined in paragraph (a) of Section 24—1 of this Code, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto, or any other deadly or dangerous weapon or instrument of like character. ***." Ill. Rev. Stat. 1981, ch. 38, par. 33A—1.

"A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." Ill. Rev. Stat. 1981, ch. 38, par. 33A—2.

Defendant first argues that pursuant to statute, a knife is considered a dangerous weapon only if it has "a blade of at least three inches in length." Thus, because the length of the blade is an essential element of the offense of armed violence which the State failed to specify in its indictment, the indictment was invalid and the conviction based upon it must be reversed.

Section 111—3(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 111—3(a)) contains the requirements for a charging instrument. A charging instrument must, *inter alia*, state the name of the offense, cite the statutory provision, and set forth the nature and elements of the offense. We believe that the indictment for armed violence in the present case adequately set forth the nature and elements of the armed-violence offense by stating that it was based on the commission of the attempted rape "while armed with a dangerous weapon: to wit a knife." Contrary to defendant's contention, the statute does not preclude all knives with blades shorter than three inches from being characterized a dangerous weapon. As the State correctly points out, defendant conveniently overlooked that portion of the statute which states, "*** or any other deadly or dangerous weapon or instrument of like character." Thus, while a knife

with a three-inch blade is *per se* a dangerous weapon pursuant to section 33A—1, similar instruments fall within the purview of the statute if it is established that they became a dangerous weapon when used in a manner dangerous to the physical well-being of the individual threatened. (*People v. Hill* (1977), 47 Ill. App. 3d 976, 978, 362 N.E.2d 470.) Moreover, for purposes of sufficiency of the indictment, we do not find that the absence of blade-length specificity resulted in substantial prejudice to defendant's ability to prepare a defense. *People v. Foust* (1980), 82 Ill. App. 3d 516, 522, 401 N.E.2d 1329.

■ Defendant further contends that the jury was improperly instructed as to the definition and elements of armed violence, thereby depriving him of the right to a fair trial.

The jury instructions regarding armed violence stated, in pertinent part:

"A person commits the crime of Armed Violence when, while armed with a dangerous weapon, he commits the crime of Attempt Rape." People's non-I.P.I. No. 14.

"To sustain the charge of Armed Violence, the State must prove the following propositions:

First, that Anthony Hall was armed with a dangerous weapon;

Second, that Anthony Hall, while armed with a dangerous weapon, he committed the crime of Attempt Rape." People's non-I.P.I. No. 15.

The general rule is that a trial court is under no duty to give instructions which are not requested by either party, and the failure to object to those instructions given waives any errors for review. As a caveat, in criminal cases, substantial defects in instructions are not waived by failure to make timely objections if the interest of justice requires it. However, one who seeks to avoid waiver of defects in instructions for failure to make specific objections has the burden of establishing (a) that the defects in the instruction are substantial, and (b) that the giving of the instruction resulted in denial of a fair trial to defendant. *People v. Suerth* (1981), 97 Ill. App. 3d 1005, 1011, 423 N.E.2d 1185.

In the present case, although defense counsel objected to the State's instructions regarding armed violence, we find that the objection was so vague and ambiguous as to be rendered ineffectual in preserving the issue. Further, the State expressly asked for specific reasons for the objection at the time it was made. In response, defense counsel merely stated that the armed violence instruction would confuse the jury and create a problem. In our opinion, defendant's failure

to specifically object to those instructions constituted a waiver of their alleged defects. *People v. Van Winkle* (1980), 86 Ill. App. 3d 289, 408 N.E.2d 29, *modified on other grounds* (1981), 88 Ill. 2d 220, 430 N.E.2d 987.

Further, we do not find that the absence of a definition for the term "dangerous weapon" was a substantial defect that denied defendant a fair trial. The jury was instructed that an element of armed violence was that defendant must have been armed with a dangerous weapon. The only weapon presented into evidence was a knife found next to defendant at the time of his arrest. Thus in view of the verdict, it is apparent that the jury found that defendant was armed with that knife which was found near him at the time of his arrest. In this regard, defendant argues that complainant never identified the knife found near defendant as the one used by her assailant. We decline to attach any importance to this lack of direct evidence. Circumstantial evidence is sufficient to prove that a defendant was armed while committing an offense. Further, a weapon is sufficiently connected to a crime if it is shown that the weapon found on the defendant when arrested is suitable for commission of the crime charged. (*People v. Suerth* (1981), 97 Ill. App. 3d 1005, 1013, 423 N.E.2d 1185.) In the present case, the fact that complainant testified that defendant threatened her with a knife, and the next day defendant was arrested in the vicinity of the crime with a knife next to him was sufficient for the jury to conclude that defendant was armed with that knife at the time of the offense. In our opinion, the evidence was not so improbable, contradictory, unsatisfactory or inconclusive as to the identity of dangerous weapon that the absence of a precise definition of the term could be considered a substantial defect in jury instructions. *People v. Perez* (1981), 101 Ill. App. 3d 64, 427 N.E.2d 820.

Lastly, defendant urges that the armed-violence charge cannot be supported because a knife with a blade of indeterminate length cannot be deemed a "dangerous weapon" under the statute. We disagree and find *People v. Hill* (1977), 47 Ill. App. 3d 976, 362 N.E.2d 470, dispositive of the issue.

In *Hill*, the court was confronted with the question as to whether an unloaded air pistol was a dangerous weapon. In determining that it was, the court stated,

> "That the instrumentality used to threaten a victim of a robbery is capable of being used in a manner to cause harm or injury thereby compels a finding that the instrumentality is a dangerous weapon." 47 Ill. App. 3d 976, 978.

In the present case, complainant testified that in attempting to

grab the knife away from defendant, she cut her thumb and jabbed her hand with the blade. Further, complainant described the blade as "big" and stated that when it was inserted in defendant's pants, the blade came up to his stomach. She then physically demonstrated to the jury how the knife was positioned on defendant's person. This evidence provides ample support for a conclusion that the knife used in the commission of the offense was capable of causing harm or injury. Thus, we conclude that even if the knife used by defendant was not *per se* dangerous, *i.e.*, enumerated in the statute, it was transformed by defendant's usage into a dangerous weapon well within the meaning of the statute. *People v. Lee* (1977), 46 Ill. App. 3d 343, 348, 360 N.E.2d 1173.

## V

■■ Next, defendant argues that the trial court erred in not vacating the conviction of attempted rape, the underlying felony for the armed-violence conviction. The State agrees and we concur. Pursuant to *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477, convictions cannot stand on both an armed-violence charge and its predicate offense. Therefore, we conclude that the trial court erred in not vacating the attempted-rape conviction.

## VI

■■ Finally, the State requests that pursuant to section 8 of "An Act concerning fees and salaries \*\*\*," section 110—7(h) of the Code of Criminal Procedure of 1963, and section 13 of the Criminal Code of 1874 (Ill. Rev. Stat. 1981, ch. 53, par. 8; ch. 38, pars. 110—7(h), 180—3), this court grant costs to the State and incorporate same as part of its judgment in the amount of $50 for defending the appeal and an additional $25 for oral argument.

We find the following statutory provisions determinative of this issue:

> "State's attorneys shall be entitled to the following fees, \*\*\*:
>
> \* \* \*
>
> For each case of appeal taken from his county or from the county to which a change of venue is taken to his county to the Supreme or Appellate Court when prosecuted or defended by him, $50.
>
> For each day actually employed in the trial of a case, $25; in which case the court before whom the case is tried shall make an order specifying the number of days for which a per diem shall be allowed." Ill. Rev. Stat. 1981, ch. 53, par. 8.

Based on the aforementioned, we hereby grant the State's request for an appeal fee of $50 and deny its request for an additional $25 for oral argument. Our denial is predicated on our interpretation of the *per diem* provision of the statute which we find clearly refers to the actual trial in the circuit court, and not to the oral argument on appeal.

Accordingly, the judgments entered by the circuit court of Cook County for armed robbery and armed violence predicated upon attempted rape are affirmed; and the judgment for attempted rape is vacated. Costs of $50 shall be taxed to defendant pursuant to section 8 of "An Act concerning fees and salaries ***" and section 110—7(i) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 53, par. 8; ch. 38, par. 110—7(i)).

Affirmed as modified.

LORENZ and SULLIVAN, JJ., concur.