Hugh MARTIN, Plaintiff,

v.

STATE OF INDIANA, Respondent.

No. S 74–181.

United States District Court,
N. D. Indiana,
South Bend Division.

Sept. 23, 1977.

---

5. See, especially, testimony of Carlos Milam, elicited by State Farm and quoted supra, at p. 230.

John R. Obenchain, South Bend, Ind., for petitioner.

Theodore L. Sendak, Atty. Gen., Indianapolis, Ind., for defendant.

## MEMORANDUM OPINION

ALLEN SHARP, District Judge.

In June 1967 an Indiana gas station was robbed and the station attendant was shot. In October of that same year the petitioner, Hugh Martin, was identified at a pretrial lineup as the perpetrator of the crime by the victim. The petitioner requested counsel but his request was denied. On November 17, 1967 the petitioner was initially charged with inflicting physical injury while in the commission of a robbery. I.C. 35–13–4–6. (Burns Ann.Stat. § 10–4101) Subsequently, the petitioner was found guilty by the court and sentenced to life imprisonment. In 1972 the Indiana Supreme Court affirmed his conviction in a 3–2 decision in *Martin v. State*, 258 Ind. 83, 279 N.E.2d 189 (1972). Thereafter, Martin's successive petitions for a writ of habeas corpus were denied by this court. In 1975 the United States Court of Appeals for the Seventh Circuit reversed and remanded the denial of the writ of habeas corpus by this court and directed this court to determine (1) whether the lineup was conducted without counsel after formal charges were preferred, and (2) whether the pretrial lineup was impermissibly suggestive and if so, this court must then conduct a hearing to determine whether the in-court identification was nonetheless reliable. *Martin v. State of Indiana*, CA 7, 521 F.2d 682 (1975). On May 20, 1977 this court held such a hearing.

Petitioner's first issue, that he was denied his right to counsel, can be resolved quickly. In *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the United States Supreme Court held that a defendant's right to counsel at a pretrial lineup occurs only after formal charges have been filed against him. Therefore, the petitioner in this case was not entitled to counsel at his pretrial lineup if at that time formal charges had not yet been filed against him. While the petitioner states that the lineup occurred after formal charges were filed against him, there is no evidence in the record to support this claim.

■ On the contrary, at the trial the petitioner himself declared that the lineup took place in October of 1967, (transcript p. 207), while the record reflects that the affidavit for inflicting physical injury while in the commission of a robbery was filed on November 17, 1967. Under these facts and under *Kirby*, supra, the petitioner did not have a right to counsel at the pretrial lineup. For this court to reach a contrary result, as advanced by the petitioner, this court would have to totally disregard the petitioner's sworn testimony at his earlier trial.

Petitioner's second issue, regarding an impermissibly suggestive pretrial lineup, does not lend itself to a quick resolution. Unlike the first issue, the second requires an indepth analysis of the law and a careful and meticulous examination of the facts.

It was first in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), that the United States Supreme Court held that a defendant could claim that a pretrial confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." Id. at 301–302, 87 S.Ct. at 1972. The court went on to hold that this must be determined by "the totality of the circumstances." Id. at 302. Later, in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1238 (1968), the Su-

preme Court again declared that convictions based upon eyewitness identification at trial following a pretrial identification procedure will only be set aside if the pretrial identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Id. at 384, 88 S.Ct. at 971.

■ The obvious concern with suggestive pretrial identification procedures is misidentification. As Mr. Justice Brennan said, writing for the majority, in *U. S. v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967):

"A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification. A commentator has observed that '[t]he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor—perhaps it is responsible for more such errors than all other factors combined.' Wall, Eyewitness Identification in Criminal Cases 26. Suggestion can be created intentionally or unintentionally in many subtle ways. And the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest.

Moreover, '[i]t is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial.'" (footnotes omitted) Id. at 228–229, 87 S.Ct. at 1933.

■ While suggestive pretrial identification procedures are subject to attack as violating due process, as a result of *Stovall,* supra, it wasn't until *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972),

that the Supreme Court expanded upon the phrase "the totality of the circumstances," which was first used in *Stovall*. In *Neil*, the Supreme Court listed five factors to be considered when viewing the "totality of the circumstances." Those factors are:

■ The opportunity to view the criminal at the time of the crime.

■ The witness' degree of attention.

■ The accuracy of the witness' prior description.

■ The level of certainty demonstrated at the confrontation.

■ The length of time between the crime and the confrontation. Id. at 199–200, 93 S.Ct. at 382.

In addition to these factors, the Seventh Circuit Court of Appeals has noted three different aspects of the "totality of the circumstances." They are:

■ The *suggestive* aspects of the police procedures . . .

■ The *justification* for using a suggestive procedure . . .

■ The *reliability* of the identification . . . *U. S. ex rel Kirby v. Struges*, CA 7, 510 F.2d 397 (1975).

■ In the present case the undisputed facts are as follows:

1. The crime took place during the evening of June 29, 1967. It lasted approximately 10–20 minutes, most of which was consumed in a scuffle in which the victim was shot.

2. The victim described one of his assailants as being a "dark-skinned colored man", approximately 5′ 9″ tall, heavy built, and between 32 and 36 years old.

3. Approximately four months later a lineup was conducted in which the defendant/petitioner participated.

4. At the lineup:

(a) 12 people participated.

(b) of the 12, ten were Caucasian.

(c) Of the ten Caucasian, two were women.

(d) The only other Black besides the defendant was 18 years old and 5′ 3″ tall.

(e) Only the defendant was requested to speak.

(f) Only the defendant was wearing prison type clothing.

Apply these facts to the factors listed in *Neil*, supra, this court is led to the conclusion that the pretrial lineup was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." *Stovall*, 388 U.S. at 301–302, 87 S.Ct. at 1972.

1. The opportunity to view at the time of the crime was brief at best. The victim testified the crime took between 10–20 minutes, much of which was consumed by a scuffle.

2. The witness' degree of attention was neither long nor intense. There is evidence he had been working for over 12 hours prior to the crime. In addition, the witness' attention was divided between his assailants during the short period of time the crime took place.

3. The accuracy of the witness' prior description is very general due to in part, no doubt, the victim's distraction at the time of the crime and an insufficient amount of time to make a more thorough observation.

4. The level of certainty at the confrontation is highly suspect given the composition of the lineup.

5. The length of time between the crime and the confrontation is approximately four months. This is a substantial amount of time. Clearly this is sufficient time for the victim's mind to become cloudy and faint on the details and further enhance the possibility of a misidentification. Further, coupling the short observation time at the scene of the crime, 10–20 minutes, with this long period before pretrial confrontation, approximately four months, the likelihood of misidentification becomes less a possibility and more a probability.

The Seventh Circuit Court of Appeals in addressing the issue of impermissibly suggestive pretrial identification has, after applying the "totality of circumstances" test in several cases, found no violation of the defendants' due process rights. However, each of these decisions are factually distinguishable. In *United States v. Kimbrough*, CA 7, 528 F.2d 1242 (1976), the crime was assault with intent to steal mail. The critical time between the crime and the pretrial identification was less than one day. In *Israel v. Odom*, CA 7, 521 F.2d 1370 (1975), the crime was rape. The time period between the crime and the pretrial identification was one day. In *U. S. ex rel Kirby v. Struges*, 510 F.2d 397 (1975), the crime was robbery. The time between the crime and the pretrial identification was two days. In *U.S. ex rel Pierce v. Cannon*, CA 7, 508 F.2d 197 (1974), the crime was robbery. The time period between the crime and the pretrial identification was less than one day. In all of these cases the distinguishing fact was the time period between the crime and the pretrial identification. In these cases it was either within one or two days of the crime. But in the present case approximately four months had elapsed.

In accord with the directions in *Martin v. State of Indiana*, CA 7, 521 F.2d 682 (1975), the State was given an opportunity to show this court that even if the pretrial identification was impermissibly suggestive that the in-court identification was nevertheless reliable. On May 20, 1977 such a hearing was held but the State declined to put on any evidence. It chose to rely on the transcript of the earlier trial and argue from the record. Since no new evidence was presented and since this court has made an exhaustive study of the transcript and the record, it is the opinion of this court that the State of Indiana has failed to meet its burden of proving by "clear and convincing" evidence that the in-court identification was nevertheless reliable.

Furthermore, since the only other identification testimony came from an alleged accomplice, a traditionally suspect source, (the alleged accomplice was never charged with this crime or given immunity, and raised serious credibility questions), this court cannot hold that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1972).

This Judge of this court has no desire to unduly and improperly interfere with the ordinary processes of criminal justice of the State of Indiana and will not do so except where the constitutional and statutory obligations of this court compel the same. In this case such obligations compel the action taken and the result reached.

Therefore, in light of the foregoing, the petitioner's, Hugh Martin, petition for a writ of habeas corpus is GRANTED and the writ shall issue unless within 120 days from the date this order becomes final the State of Indiana institutes proceedings to retry the petitioner.

In accord with this memorandum separately entered findings and conclusions are entered.