UNITED STATES of America ex rel. Anthony HALL, Petitioner-Appellant,

v.

Michael LANE, Director, Department of Corrections, James Thieret, Warden, Menard Correctional Center, Neil F. Hartigan, Attorney General, Respondents-Appellees.

No. 85–1594.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 5, 1986.
Decided Oct. 22, 1986.

Mary Elizabeth Uetz, Law Student, Prof. Thomas Broden, Legal Aid & Defender Assoc., Notre Dame Law School, Notre Dame, Ind., for petitioner-appellant.

Mark L. Rotert, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before FLAUM and EASTERBROOK, Circuit Judges, and SWYGERT, Senior Circuit Judge.

FLAUM, Circuit Judge.

While in jail awaiting trial in one case, Anthony Hall was required to appear in a line-up as a suspect in a second case. He challenges his conviction in the second case, arguing that the trial court should have suppressed the identification made at the line-up because the prison authorities refused to allow him to have his attorney from the first case present. The district court denied his petition for a writ of habeas corpus. Because the government had not begun the "prosecution" against Hall in the second case at the time of the line-up, we conclude that he had no Sixth Amendment right to counsel and that the identification evidence was admissible. We therefore affirm.

## I

On November 25, 1980, Anthony Hall was arrested on charges of attempted robbery and unlawful restraint. He was placed in the Cook County Jail. Hall was represented at the arraignment and preliminary hearing on these charges by a private lawyer, Robert Romanoff. A Cook County grand jury indicted Hall on these charges on December 15, 1980.

On December 16, while he was in jail awaiting trial, the jail authorities informed Hall that he was required to participate in a line-up as a suspect in a second, unrelated case. Hall requested permission to contact his lawyer. The jail authorities denied his request. However, an assistant state's attorney, believing that Hall was represented by the public defender's office, contacted that office. They did not furnish counsel. Following the line-up, after being given permission, Hall contacted Romanoff.

Immediately after the line-up, the complainant in the second case identified Hall as her assailant. Three days later, the Cook County grand jury indicted Hall in this case, charging him with armed robbery, armed violence, and attempted rape. A trial on these charges was held in Cook County Circuit Court in March, 1981.

Prior to the start of the trial, Hall's counsel moved to suppress the line-up identification and any in-court identification based upon it. The court denied this motion and the evidence was later admitted. Following the trial, the jury found Hall guilty on all counts. The trial judge sentenced him to 40 years in prison on the armed robbery and armed violence charges, to run concurrently. He entered no sentence on the attempted rape charge.

Hall appealed his conviction to the Illinois Appellate Court, which affirmed his armed robbery and armed violence convictions, but vacated the attempted rape judgment because, under Illinois law, that crime is a predicate offense for the armed violence conviction. *People v. Hall*, 117 Ill. App.3d 788, 805, 73 Ill.Dec. 192, 195, 453 N.E.2d 1327, 1340 (1st Dist.1983). The court specifically considered, and rejected, Hall's Sixth Amendment claim. *Id.* at 797, 73 Ill.Dec. at 200, 453 N.E.2d at 1335. The Illinois Supreme Court declined to order a rehearing and the United States Supreme Court declined to grant certiorari. *Hall v. Illinois*, 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984).

Hall then petitioned the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 2254, seeking a writ of habeas corpus based on the claimed Sixth Amendment violation. The District Court dismissed the petition. Hall thereupon filed an appeal with this court.

## II

■ At oral argument, the government observed that jail authorities and prosecutors would be "well advised" to allow a prisoner in Anthony Hall's position to contact his lawyer. We agree. "The government should make every effort when defendants are in custody to hold line-up identifications with the presence of counsel." *United States v. Gidley*, 527 F.2d 1345, 1352 (5th Cir.1976). The presence of "counsel can hardly impede legitimate law enforcement; on the contrary ... law enforcement may be assisted by preventing the infiltration of taint...." *United States v. Wade*, 388 U.S. 218, 238, 87 S.Ct. 1926, 1938, 18 L.Ed.2d 1149 (1967).

Had the jail authorities granted Hall's request to contact his lawyer, or had the assistant state's attorney taken a moment to determine who was representing Hall, much needless litigation would have been avoided. The question for this court, however, is not what the jail authorities or the assistant state's attorney should have done. The question for this court is whether their actions rise to the level of a constitutional violation requiring this court to grant appellant's petition for a writ of habeas corpus. Under the facts of this case, we cannot say that they do.

The Sixth Amendment, "made obligatory upon the states by the Fourteenth Amendment," *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963), guarantees the right to counsel during all "critical stages of the prosecution," *Wade*, 388 U.S. at 237, 87 S.Ct. at 1937. Appellant advances three arguments in support of his claim that he was entitled to this protection at the line-up. First, and most broadly, he argues that because of its potential for prejudice, a line-up is always a "critical stage of the prosecution," and that the state is, therefore, always obligated to grant the right to counsel. Second, and more narrowly, appellant argues that, because he was in jail awaiting trial in the first case, the adversary position of the state had so "solidified" that he was entitled to counsel in the second case. Finally, appellant argues that if we do not extend the right to counsel, we will be giving prosecutors an incentive to delay the initiation of formal adversary judicial proceedings in order to deprive suspects of the right to counsel.

In arguing that the Sixth Amendment should apply to all line-ups, the appellant correctly observes that these proceedings are, indeed, "critical." A line-up is fraught with the possibility of prejudice. "The vagaries of eyewitness identification are well-known." *United States v. Wade*, 388 U.S. at 228, 87 S.Ct. at 1933. This may be especially true in "rape and robbery [cases which] present a particular hazard that a victim's understandable outrage may excite vengeful or spiteful motives." *Id.* at 230, 87 S.Ct. at 1934. *See generally id.* at 228–36, 87 S.Ct. at 1933–37 (discussing the "grave potential for prejudice" in a line-up procedure). In some cases, an identification made at a line-up may be the decisive factor leading to an eventual conviction. *See id.* at 235, 87 S.Ct. at 1936. The presence of counsel, moreover, may be a potent weapon in preventing prejudice. *See id.* at 236, 87 S.Ct. at 1937.[1]

■ It is not enough, however, for appellant to prove that, in retrospect, a pretrial event such as a line-up was a potentially-prejudicial "critical event" that may ultimately have led to his conviction. Rather, appellant must prove that, *at the time it was conducted,* the procedure was a "critical stage of the *prosecution,*" *United States v. Wade*, 388 U.S. at 237, 87 S.Ct. at 1937 (emphasis added). "By its very terms, [the Sixth Amendment] becomes applicable only when the government's role shifts from investigation to accusation." *Moran v. Burbine,* — U.S. —, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986). The right to counsel, therefore, attaches only when "the state [becomes] aligned against

---

**1.** For these reasons, the Supreme Court has held that the Sixth Amendment requires that, following the initiation of formal "adversary judicial criminal proceedings," the state must always allow a suspect to have the assistance of counsel. *Wade,* 388 U.S. at 226, 87 S.Ct. at 1931.

the accused," *United States v. Wade,* 388 U.S. at 235, 87 S.Ct. at 1936.[2]

The Supreme Court has not spoken with one voice in defining which events constitute the starting points in the prosecution. It is settled that five specific "adversary judicial criminal procedures"—a formal charge, preliminary hearing, indictment, information, or arraignment—are always starting points. *See Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1973) (plurality) (Stewart, J.).[3] *See also Moore v. Illinois,* 434 U.S. 220, 227–32, 98 S.Ct. 458, 464–67, 54 L.Ed.2d 424 (1977) (reiterating the *Kirby* procedures). What is not absolutely certain is whether these are the *only* events that can *ever* constitute the start of the "prosecution." *Compare Maine v. Moulton,* —— U.S. ——, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985) ("*'[W]hatever else it may mean,* the right to counsel guaranteed by the Sixth and Fourteenth Amendments means *at least* that a person is entitled to the help of a lawyer at or after the time that judicial proceedings are initiated against him....' " (quoting *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977) (emphasis added)) *with Moran v. Burbine,* —— U.S. ——, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986)

("[T]he Sixth Amendment right to counsel does not attach until after the initiation of formal charges."). This circuit has carefully left open the question of whether a party in police custody may *ever* have a Sixth Amendment right to counsel at a line-up held prior to the initiation of formal adversary judicial proceedings. *See Bruce v. Duckworth,* 659 F.2d 776, 783 (7th Cir. 1981) *cert. denied,* 455 U.S. 955, 102 S.Ct. 1464, 71 L.Ed.2d 673 (1982).[4]

Even if the Sixth Amendment right to counsel may sometimes vest at a line-up prior to the initiation of formal judicial proceedings, however, appellant is clearly wrong in suggesting that it always does so. Unlike the five adversary judicial procedures enunciated in *Kirby,* a line-up is not *always* a part of the prosecution. The state may lawfully take a suspect into custody before it has enough evidence to bring formal charges. *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). At that point, the role of the state is generally that of a fact-finder. The right to counsel attaches only when a defendant proves that, at the time of the procedure in question, the government had crossed the constitutionally-significant divide from fact-finder to adversary. *See DeAngelo v. Wainwright,* 781

---

**2.** The fact that a line-up held before the start of a prosecution may have as much prejudicial effect at trial as a line-up held after the prosecution has begun is somewhat troubling. However, from the moment an individual is taken into custody by the police, the possibility of grave prejudice exists. The right to counsel, while an important safeguard, is not the *only* one. The Fifth Amendment provides considerable protection against such prejudice. The police may not—overtly or subtly—coerce an individual into verbally incriminating himself. *See, e.g., Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1967). Nor may they use non-verbal procedures, such as a line-up, in a manner that is fundamentally unfair. *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972); *Foster v. California,* 394 U.S. 440, 442, 89 S.Ct. 1127, 1128, 22 L.Ed.2d 402 (1969); *Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972–73, 18 L.Ed.2d 1199 (1967); *Martin v. Indiana,* 438 F.Supp. 234, 236–38 (N.D.Ind.1977), *aff'd,* 577 F.2d 749 (7th Cir.) *cert. denied,* 439 U.S. 900, 99 S.Ct. 265, 58 L.Ed.2d 248 (1978).

**3.** The plurality in *Kirby* found that, because none of these events had occurred, the petitioner did not have a right to counsel at a police station "showup." The dissenters would have found a right to counsel notwithstanding the fact that the state had not yet initiated adversarial judicial proceedings. *See id.* 406 U.S. at 691–705, 92 S.Ct. at 1883–90 (Brennan, J., dissenting); *id.* at 705, 92 S.Ct. at 1890 (White, J., dissenting).

**4.** Our decision in *Rodgers v. Lincoln Towing Service,* 771 F.2d 194 (7th Cir.1985), did not foreclose the issue. In that case we affirmed the district court's dismissal of a § 1983 suit that claimed, *inter alia,* deprivation by state officials of the plaintiff's right to counsel. We found only that the plaintiff had no right to counsel because "nothing happened" during the 10½ hour period between his arrest and the filing of formal charges against him.

F.2d 1516, 1519–20 (11th Cir.1986) (Sixth Amendment right does not vest when the state gathers information in a "nonadversarial atmosphere"; appellant must prove that state was seeking to gain "incriminating evidence."). Requiring an individual in custody to participate in a line-up—without more—is insufficient to establish that the government has always made the fateful passage.

Appellant next argues that "something more" is provided by the fact that Anthony Hall had already been indicted, and was in jail awaiting trial, for another crime. We do not see how this fact, standing in isolation, changes the analysis. "The fact [that appellant] was in custody for an unrelated offense at the time of the line-up has no bearing on the issue here ... since the government had not 'committed itself to prosecute' [appellant] for this offense at the time of the line-up...." *United States v. Tyler*, 592 F.2d 261, 263 (5th Cir.1979).

On December 16, 1980, the date of the line-up, the State of Illinois had become Anthony Hall's adversary in the first case. However, there is no reason to believe that the state's reasoned decision to seek Hall's conviction on these charges translated into a desire to seek his conviction in the second case, which involved wholly unrelated charges about which the state was still gathering evidence. While appellant might well have a Sixth Amendment claim if the state had begun judicial proceedings in the first case in order to hold him in custody while it built its case against him in the second case, that simply did not occur here.[5]

Appellant's final argument is that, by not extending the right to counsel in this case, we are giving the state an incentive to delay the initiation of formal judicial proceedings in order to deprive defendants of their right to counsel. We disagree. In deciding this case, we have not felt compelled to adopt a "bright line" test concerning when the right to counsel vests. "We do not believe ... that by simply delaying the occurrence of an arraignment or preliminary hearing ... the state can in effect suspend the right to counsel until it has neatly tied its case together and obtained, unmonitored, the desired line-up identifications." *United States ex rel. Burton v. Cuyler*, 439 F.Supp. 1173, 1181 (E.D.Pa. 1977), *aff'd*, 582 F.2d 1278 (3rd Cir.1978).

■ Under the Sixth Amendment, the right to counsel may apply where, prior to initiation of judicial proceedings, a suspect had, in reality, "become the accused." *Escobedo v. Illinois*, 378 U.S. 478, 485, 84 S.Ct. 1758, 1762, 12 L.Ed.2d 977 (1964); *Flittie v. Solem*, 775 F.2d 933, 943 (8th Cir.), *cert. denied*, — U.S. — 106 S.Ct. 1223, 89 L.Ed.2d 333 (1985). Moreover, even if the Sixth Amendment does not apply, it is settled that "the Fifth Amendment requires the dismissal of an indictment ... if the defendant can prove that the government's delay in bringing the indictment was a deliberate devise to gain an advantage over him and that it caused him actual prejudice in presenting his defense." *United States v. Gouveia*, 467 U.S. 180, 192, 104 S.Ct. 2292, 2300, 81 L.Ed.2d 146 (1984).

Notwithstanding the above, under the facts of this case there is "no evidence of an attempt by the police to vitiate [appellant's] right to counsel at the line-up by deliberately delaying commencement of adversary proceedings." *United States ex rel. Burbank v. Warden, Illinois State Penitentiary*, 535 F.2d 361, 370 (7th Cir. 1976), *cert. denied*, 429 U.S. 1045, 97 S.Ct. 750, 50 L.Ed.2d 758 (1977). At the time of the line-up, Anthony Hall was still a genuine suspect. The state was seeking to determine whether to prosecute him; it had not yet begun to do so. Accordingly, at the time of the line-up, Hall had no Sixth Amendment right to counsel. Identification evidence from the line-up was, therefore, admissible at trial.

---

5. We also find it constitutionally insignificant that Hall sought the assistance of his previously retained, private counsel. "The Sixth Amendment's intended function is not to wrap a protective cloak around the attorney-client relationship...." *Moran v. Burbine.* 106 S.Ct. at 1146.

## III

 Appellant notes, in passing, that the Due Process Clause bars identifications that are suggestive and have the potential to mislead. This, of course, is correct. *See supra* n. 2. Even if we were to construe this as an allegation of error, however, we could not pass on it because appellant did not raise the issue in the proceedings below. *See Craft v. Board of Trustees*, 793 F.2d 140 (7th Cir.1986).

The decision of the district court is, therefore, AFFIRMED.