Annette JACOBS, Individually and as sole stockowner in Jakes Marketplace, Inc., an Illinois Corporation, Plaintiffs,

v.

Bruce PAYNTER, etc., et al., Defendants.

No. 89 C 3321.

United States District Court, N.D. Illinois, E.D.

Dec. 19, 1989.

1214

Alan T. Schencker, Grant & Schencker, Chicago, Ill., for plaintiffs.

Kelly R. Welsh, Carolyn A. Bird, Corp. Counsel's Office, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Annette Jacobs, individually and on behalf of Jakes Marketplace, Inc., brings this action pursuant to 42 U.S.C. § 1983 alleging violations of her rights under the Fourth, Sixth and Fourteenth Amendment to the Constitution, as well as several common law tort causes of action. The defendants include: Bruce Paynter, an Assistant States Attorney for Cook County, Illinois; police officer Robert Pistilli; police officer Jeffrey Kumorek; police officer Thomas J. O'Connor; police officer John Schnoor; police officer Richard Obermaier; unknown Chicago police officers; Superintendent of Police Leroy Martin; Cook County State's Attorney Cecil A. Partee;[1] and the City of Chicago. We consider in this opinion the motions to dismiss of each defendant, with the exception of Paynter.[2]

### Background

For the purposes of the motions, we assume the truth of Jacobs' allegations. *Zin-*

---

1. Partee's predecessor, Richard M. Daley, was originally named in the complaint. Partee has been substituted pursuant to Fed.R.Civ.P. 25(d)(1).

2. A motion has recently been filed by Paynter, but is not yet fully briefed.

*ser v. Rose,* 868 F.2d 938, 939 (7th Cir. 1989). Jacobs is the sole shareholder of Jakes Marketplace, Inc. ("Jakes"). Jakes is in the business of dealing and appraising collectibles such as coins, stamps and baseball cards.

Jacobs has been subjected to a long history of unfair treatment by the police. For a period of two years prior to February 1989, the police would "aggressively" enter Jakes about once every two months. While the police were inside the store, they would "freely move about with no concern for privately controlled areas." (Cmplt., ¶ 15).

On February 18, 1989, Paynter entered Jakes accompanied by Pistilli, Kumorek, O'Connor, Schnoor and Obermaier, who are detectives in the Chicago Police Department. These individuals, who did not have a search warrant, demanded to see all recently purchased baseball cards. Paynter and the officers threatened to obtain a search warrant and "tear the place apart" if Jacobs did not cooperate.

Paynter then proceeded to inspect Jakes' inventory of baseball cards. Paynter told the police officers that certain baseball cards actually belonged to him and had been stolen from his residence. The police seized these cards and other items without Jacobs' consent.

Jacobs states that after "the latest incidents commencing on February 18, 1989, [she] complained to the Chicago Police Department about wrongful conduct and behavior by police officers." (Cmplt., ¶ 15). The complaint is silent as to what action, if any, was taken in response to Jacobs' protests.

On February 24, 1989, police officer Kumorek obtained a warrant to search Jakes. The warrant authorized the police to seize any baseball cards known to have been stolen from Paynter's residence. The police seized various items, such as pocketwatches and Egyptian ingots, which were not specified in the search warrant.

Jacobs also complains that during the execution of the warrant, the police forced six Jakes' employees to stand for two hours in a "small two person room." (Cmplt., ¶ 29). In addition, Jacobs alleges that the employees and a customer were "roughly handled"; these actions resulted in "undue hardship and physical and emotional strain."

Jacobs alleges that the police searches on February 18 and February 24 constituted unlawful searches and seizures and violated her Sixth Amendment, equal protection and due process rights. In addition, Jacobs states that the police conduct constituted "arrest, theft intentional infliction of emotional distress, negligence and gross negligence under the laws of the State of Illinois." Martin and Partee are sued in their official capacity. Paynter and the police officers are sued individually, as well as in their official capacities.

### Discussion

As a threshold matter, the defendants assert that Jacobs has improperly commingled her corporate and individual claims. Jacobs uses the singular "plaintiff" throughout the complaint and fails to identify which claims are asserted individually and which claims are asserted on behalf of the corporation. The defendants state that Jacobs is attempting to assert claims for injuries suffered by the corporation, as if she had suffered these injuries individually.

■ A corporation and its shareholders are separate entities. *Kush v. American States Ins. Co.,* 853 F.2d 1380, 1383 (7th Cir.1988); *Bevelheimer v. Gierach,* 33 Ill. App.3d 988, 339 N.E.2d 299, 303 (1st Dist. 1975). Thus, a shareholder cannot sue individually for injuries suffered by the corporation. *Id.* However, "[t]he general rule that corporation and its shareholders are separate entities is subject to the qualification that the separate identity may be disregarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights." *Bevelheimer,* 339 N.E.2d at 303 (citations omitted). Jacobs argues that she falls within the *Bevelheimer* exception.

■ We reject Jacobs' position for two reasons. First, she has not identified any exceptional circumstances that indicate prejudice to the protection of either enti-

ties' rights would result from recognizing their separate identities. Second, *Bevelheimer* mandates that "one who seeks to have the court apply an exception [to the rule that the shareholder and corporation are separate entities] *must seek that relief in his pleading* and carry the burden of proving actual identity." *Id.* (citations omitted) (emphasis added). Jacobs failed to seek or justify the application of this exception in her pleading. Accordingly, we will treat Jacobs' claims as if they were asserted individually.[3]

This threshold issue aside, we turn to the substantive issues raised by the defendants' motions. The defendants launch two distinct attacks on the complaint. First, they assert that the official capacity claims and the claim against the City of Chicago should be dismissed because the complaint fails to adequately identify a municipal policy. Second, the defendants dispute the validity of Jacobs' various substantive constitutional and common law claims.

### Municipal and Official Capacity Claims Under § 1983

■ Jacobs claims that the City of Chicago and each of the individual defendants in their official capacity are liable for the alleged violations of her constitutional rights. To the extent that the complaint attempts to state § 1983 claims against individual defendants in their official capacities, the action operates as a claim against the City of Chicago itself. *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 382 (7th Cir.1988). Thus, the liability of the municipality is the determinative inquiry in a suit against individuals in their official capacity.

■ "[T]he susceptibility of any municipality to liability under § 1983 must initially be tested under the requirements of *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)." *Id.* at 380. In *Monell*, the Supreme Court held that municipalities and other governmental units were

included among the entities to which § 1983 applies. However, *Monell* limits the contexts in which a municipality can properly be named as a defendant; "[w]e conclude ... that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 98 S.Ct. at 2037–38. Thus, a municipality can only be held liable under § 1983 for the actions of employees or agents who are acting pursuant to some municipal policy; *respondeat superior* is inapplicable in a § 1983 suit against a municipality. *Id.* at 2036.

■ A § 1983 plaintiff must prove that a municipal policy caused the alleged deprivation of her rights. This burden can be met in various ways. The most obvious and straightforward method is to identify some formally adopted policy that caused the violation of the plaintiff's rights. *See, e.g., Monell*, 98 S.Ct. at 2036–2037; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). However, plaintiffs often have difficulty in finding a formally adopted policy that caused the injury. Therefore, courts have identified alternative means, short of identifying a formally adopted policy, through which the § 1983 plaintiff can meet her burden. A § 1983 plaintiff can establish her burden by showing that her injuries were caused by the decision of a municipal decisionmaker with "final policymaking authority." *Praprotnik*, 108 S.Ct. at 924. In addition, a plaintiff can meet the requirement by alleging a series of incidents of unconstitutional conduct suggesting "the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled' as to constitute a 'custom or usage' with the force of law." *Praprotnik*, 108

---

**3.** We grant Jacobs leave to amend her complaint to reflect any damages incurred by the corporation. Any amendment is to be filed by January 5, 1990, and should reflect the rulings contained in this opinion.

S.Ct. at 926, *quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970).

Jacobs attempts to meet the municipal policy requirement by alleging that:

> Chicago Police Officers would aggressively enter Jakes Marketplace, Inc., and demand to inspect premises and possessions of plaintiff, during said inspections Chicago Police would freely move about with no concern for privately controlled areas, said incidents occurred at least once every eight weeks, for a period of approximately two years. After, the latest incidents commencing on February 18, 1989, plaintiff, Annette Jacobs, complained to the Chicago Police Department about wrongful conduct and behavior by police officers. Said series or pattern of incidents over given period of time demonstrate [sic] unconstitutional conduct and show [sic] a policy sufficient to hold the City of Chicago liable under Section 1983.

(Cmplt., ¶ 15).

We find that this allegation is insufficient to sustain Jacobs' burden of pleading a municipal policy that caused the alleged deprivation of her rights. Clearly, there is no allegation of an officially sanctioned or formally adopted policy. Nevertheless, Jacobs argues that the allegations of municipal policy are sufficient. First, she claims that she has alleged a policy created by the decisions of a government official with policymaking authority. Second, she contends that the practice alluded to in the complaint constitutes a well settled custom with the force of law.

Jacobs has failed to adequately allege the involvement of an individual with decisionmaking authority sufficient to create municipal policy. She claims that she has sufficiently implicated Martin, chief of police, and Paynter, an Assistant States Attorney. However, the allegations involving these individuals are insufficient to sustain a finding that their actions created municipal policy.

■ Paynter's actions cannot be the foundation of municipal policy because he is not a highly placed municipal officer with authority to bind the municipality. In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986), the Supreme Court delineated the type of official whose actions create municipal policy. "[N]ot every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." The complaint alleges that Paynter is "Supervisor of Area Six felony trial courts." However, this position does not render Paynter with sufficient decisionmaking authority to create municipal policy through his actions. Paynter does not have *final* authority; his actions are supervised by the State's Attorney. *See* Ill.Rev.Stat. ch. 53, ¶ 18. Furthermore, as explained by the Supreme Court in *Pembaur*, the municipal officer must have decisionmaking authority with respect to the policy that is alleged to have violated the plaintiff's constitutional rights. *Pembaur*, 106 S.Ct. at 1299. The policy alleged by Jacobs is a policy of the Chicago Police Department. Certainly, a member of the State's Attorneys office does not have authority to create policies that bind the Chicago Police Department.

■ While Leroy Martin, as Superintendent of Police, may have decisionmaking authority sufficient to create municipal policy, the allegations of the complaint do not sustain Jacobs' assertion that Martin took any action to create such a policy. Jacobs attempts to implicate Martin by alleging that she informed the police of the February 18 search, and that Martin failed to take any action to remedy the situation. Thus, Jacobs does not find fault with any particular actions taken by Martin, but only his failure to act. "A plaintiff that faults a municipality's inaction must show that there is an extremely high degree of municipal culpability." *Jones v. City of Chicago*, 787 F.2d 200, 205 (7th Cir.1986) (citations omitted). The facts alleged in the complaint do not establish any nexus between Martin and the alleged wrongdoing. Jacobs alleges that she made complaints to the police

department; there is no allegation that these complaints were made to Martin or that he had knowledge of any police misconduct. Furthermore, while Jacobs complains that Martin failed to act on her reports of police misconduct, she alleges that she did not voice her objections until *after* the February 18 incident. (Cmplt., ¶ 15). Therefore, there is no basis to support a conclusion that the alleged police conduct resulted from any action or decision made by Martin, rather than the unauthorized misconduct of subordinate officers.

■ We also reject Jacobs' contention that she satisfies the municipal policy requirement because the alleged policy constitutes a "custom or usage with the force of law." *Praprotnik*, 108 S.Ct. at 926. Jacobs relies on a series of cases that have held that a plaintiff who alleges a pattern or series of incidents of unconstitutional conduct has alleged a municipal policy sufficient to withstand a motion to dismiss. *Gray v. Dane County*, 854 F.2d 179, 183 (7th Cir.1988). However, a plaintiff seeking to establish municipal policy in this manner must plead enough facts for the court to evaluate the legality of the alleged pattern of conduct. *See, e.g., Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir.1985). Jacobs has failed to plead facts sufficient to enable us to determine whether the pattern of events was a pattern of "unconstitutional conduct." For example, the fact that police were "aggressive" may or may not impact upon the legality of the conduct. Alleging that the police entered "private areas" reaches a conclusion properly drawn by the court, not the plaintiff. On the whole, the allegation is devoid of facts sufficient to enable us to consider Jacobs' claim that the practices of the police department constitute a municipal policy.

For these reasons, we conclude that Jacobs has failed to identify a municipal policy that caused the deprivation of her rights. Accordingly, we dismiss the claims against the City of Chicago and the individual defendants in their official capacities.

### Substantive Claims

Jacobs attempts to state a cause of action under the Fourth, Sixth and Fourteenth Amendments to the Constitution. In addition, she pleads various state common law causes of action. We consider each in turn.

■ In her complaint, Jacobs stated that her Fourteenth Amendment due process and equal protection rights were violated during the searches of her business. However, in her response brief, Jacobs fails to counter the substantive attacks on these claims made by the defendants. Instead, she states: "[p]laintiff alleges the Fourteenth Amendment claims for its function in making the Fourth Amendment applicable to the City of Chicago police officers." (¶ 4). Therefore, we conclude that Jacobs has withdrawn her Fourteenth Amendment equal protection and due process claims, and we strike these allegations from the complaint.[4]

■ Jacobs claims that the actions of the defendants deprived her of her Sixth Amendment right to "be informed of the nature and cause of the accusation against her." (Cmplt. ¶ 33(a)). "The Sixth Amendment right, however, only attaches when a formal criminal charge is instituted and a criminal prosecution begins." *United States v. Zukowski*, 851 F.2d 174, 178 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 174, 102 L.Ed.2d 144, *citing United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 1500–01, 71 L.Ed.2d 696 (1986). Because Jacobs has failed to allege that formal criminal charges had been instituted against her, she cannot maintain an action under the Sixth Amendment.

■ Jacobs cites *United States ex rel. Hall v. Lane*, 804 F.2d 79 (7th Cir.1986),

---

4. Although it is not necessary to consider the merits of the Fourteenth Amendment claims, we note that the allegations in the complaint are insufficient to state a cause of action under the Fourteenth Amendment due process or equal protection clauses. Jacobs' due process claim fails to meet the standard set forth in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981). The equal protection claim is insufficient because Jacobs fails to allege any class based discrimination. *See, e.g., Faheem–El v. Klincar*, 841 F.2d 712, 727 (7th Cir.1988).

for the proposition that her Sixth Amendment claim is viable because her complaint demonstrates government involvement. However, *Hall* does not salvage this claim. This case merely acknowledges that the Sixth Amendment protection afforded to individuals at "critical stages of prosecution" may arise before the institution of formal charges in a narrow class of cases. *Id.* at 83. An individual seeking Sixth Amendment protection prior to the filing of formal charges must demonstrate that the government has crossed the line from factfinder to adversary. *Id.* Even after drawing all possible inferences in favor of Jacobs, nothing in the complaint suggests that the government had crossed this line. Therefore, we dismiss the Sixth Amendment claims.

▆▆▆ We observe that Jacobs has stated claims under the Fourth Amendment in both Count I and Count II. In Count I, she alleges that the police entered Jakes without a warrant and seized "all items they wanted." (Cmplt., ¶ 28). In Count II, she alleges that, although the police had secured a search warrant, the defendants seized many items that were not within the scope of the warrant. (Cmplt., ¶ 27). These allegations are sufficient to state a cause of action for an unlawful seizure. *See, e.g., United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984).

Indeed, the defendants do not contend that these allegations are insufficient to state a Fourth Amendment claim for an unlawful seizure. However, they do dispute Jacobs' allegation that her confinement during the two searches of Jakes violated her Fourth Amendment rights because the defendants "seized her person."

▆▆▆ We conclude that any such claim included in Count I must be dismissed. For the purposes of the Fourth Amendment, a person is seized only when her movement is restricted in some way. *Terry v. State of Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). Jacobs fails to allege that the defendants restricted her movement in any way during the February 18 search. Thus, there can be no

Fourth Amendment claim on the theory that the defendants seized her person.

▆▆▆ In Count II, however, Jacobs alleges that she and five other individuals were confined to "a small two person room" for approximately two hours. (Cmplt. 29). Although this confinement clearly meets the *Terry* standard, the defendants assert that the Fourth Amendment claim should be dismissed. They point out that the search described in Count II was undertaken pursuant to a valid search warrant. In *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), the Supreme Court held that detention of occupants during the execution of a valid search warrant were permissible under the Fourth Amendment. The Court explained that detention was justified by the need to protect the safety of police officers and to prevent criminals from fleeing and avoiding arrest. *Id.* 101 S.Ct. at 2594.

However, implicit in the *Summers* opinion is a requirement that any detention undertaken during a search must be reasonable and minimally intrusive. For example, the Court noted that "special circumstances, or possibly a prolonged detention, might lead to a different conclusion in an unusual case ..." *Id.* at 2595, n. 21. Viewing the facts most favorably to Jacobs, the detention may have been inordinately prolonged or may have gone beyond the measures necessary to protect the officers and prevent Jacobs from fleeing. Therefore, for the purposes of the motions to dismiss, we are unable to conclude that the detention of Jacobs during the February 24 search was justified under *Summers*.

In addition to her constitutional claims, Jacobs has included a laundry list of state common law claims in Count III of the complaint. Jacobs attempts to plead a cause of action for assault, false imprisonment, false arrest, theft, intentional infliction of emotional distress, negligence and gross negligence. We deal with each in turn.

▆▆▆ Jacobs has failed to state an adequate claim for assault. Under Illinois

law, a claim for assault must include an allegation of a reasonable apprehension of an imminent battery. *See, e.g., Parrish by Bowker v. Donahue,* 110 Ill.App.3d 1081, 66 Ill.Dec. 860, 862, 443 N.E.2d 786, 788 (3d Dist.1982). Because Jacobs has failed to include this allegation in her complaint, we dismiss this claim.

 The defendants move to dismiss the claim for false imprisonment and false arrest on the ground that the confinement was undertaken with lawful authority. We observe that the lawfulness of detention of Jacobs is linked to the viability of her Fourth Amendment claim that her person was seized during the February 24 search. Therefore, we decline to dismiss these common law claims at this point, pending the resolution of the Fourth Amendment issue.

Jacobs attempts to state a cause of action for "theft." However, as the defendants state, there is no cognizable civil claim for theft under Illinois law. Certainly, this would be evident following the most cursory research an attorney would responsibly undertake. We dismiss this claim.

Jacobs also fails to plead the necessary elements for a cause of action for the intentional infliction of emotional distress. There are three elements. First there must be some truly extreme and outrageous conduct. Second, the alleged tortfeasor must intend to inflict severe emotional distress or have knowledge that there is a high probability that emotional distress would result from the conduct. Finally, the conduct must actually result in severe emotional distress. *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 623 (7th Cir.1989); *McGrath v. Fahey,* 126 Ill.2d 78, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988).

It is not clear that Jacobs has satisfied any of these pleading requirements. First, the defendants conduct does not appear to be outrageous or extreme. Second, she has failed to allege intent or knowledge on the part of the defendants. Finally, she has not alleged any facts to indicate that she has suffered severe emotional distress. Accordingly, we dismiss this claim.

The defendants also assert that Ill.Rev. Stat. ch. 85, §§ 2–201, 2–202 and 2–212, insulates public employees from liability for negligent or grossly negligent conduct. While there are some exceptions to this general rule, none seem to be applicable. In fact, Jacobs has not disputed the application of these immunity provisions. Accordingly, we dismiss the negligence and gross negligence claims.

### Conclusion

For the reasons given above, we grant the motions to dismiss the claims against Cecil Partee, Leroy Martin and the City of Chicago. We grant in part and deny in part the motions of Kumorek, Obermaier, Pistilli, Schnoor and O'Connor. We refer the motion for sanctions to Magistrate James T. Balog for report and recommendation. Jacobs may file an amended complaint on or before January 5, 1990. It is so ordered.