Angel **MARTINEZ**, et al, Plaintiffs,

v.

Scott **WOLFERSEDER**,
et al, Defendants.

No. Civ.A. 96–40183–NMG.

United States District Court,
D. Massachusetts.

March 17, 1998.

Wendy B. Golenbock, Matthew Rabinowitz, Wayland, MA, for Plaintiffs.

Michele E. Randazzo, Joseph L. Tehan, Jr., Kopelman & Paige, P.C., Boston, MA, for Scott Wolferseder, Scott Bernier, Richard Kinney, Dominick Tata.

Michele E. Randazzo, Joseph L. Tehan, Jr., Kopelman & Paige, P.C., Boston, MA, Edward P. Reardon, Reardon & Reardon, Worcester, MA, for Peter Roddy.

## MEMORANDUM AND ORDER

GORTON, District Judge.

The plaintiffs, Angel Martinez, Olga Martinez, Virginia Martinez, Cesar Martinez, Jose Martinez and Miguel Casillas brought this action against Scott Wolferseder, Scott Bernier, Richard Kinney, Dominick Tata and Peter Roddy alleging 1) violation of 42 U.S.C. § 1983, 2) violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H, 11I ("MCRA"), 3) negligence, 4) negligent infliction of emotional distress and 5) intentional infliction of emotional distress. Pending before this Court are 1) a motion of the plaintiffs for leave to file an amended complaint (Docket No. 20) and 2) a motion of defendant Roddy to dismiss (Docket No. 15).

### I. Facts as Pled in the Complaint

The following is a recitation of the facts alleged in the complaint. The plaintiffs are all related family members living at 136 Third Street in Leominster, Massachusetts. The defendants are all Leominster police officers. Defendant Roddy is Chief of the Leominster Police Department.

On May 30, 1993, the Leominster police were dispatched to the Third Street area of Leominster in response to a report of gunfire.[1] Officers Bernier, Kinney, Tata and Wolferseder met the person who reported the gunfire at the corner of Spruce and Third Streets. The officers checked the area, but found nothing.

The officers left briefly, then returned. Officer Wolferseder got out of his cruiser and yelled at Mr. Diaz, "You got a [expletive] problem?" He proceeded to challenge Mr. Diaz to a fight, throw Mr. Diaz's hat to the ground and spit on it. He then threw Mr. Diaz against the police cruiser. Officer Bernier then hit Mr. Diaz, sprayed him with mace, handcuffed him and threw him in the cruiser. Officer Wolferseder turned to Angel Martinez and stated, "Now it's your turn."

When Olga Martinez asked the police why they were hitting Mr. Diaz, she was pushed against the cruiser. Angel Martinez asked why his mother was pushed and Officer Bernier responded, "You're in big trouble now." The officer then punched Angel Martinez.

Olga Martinez pulled Angel Martinez into the house to avoid further trouble. Once inside, Angel Martinez suffered an epileptic seizure. Officer Bernier stood on the porch and challenged Angel Martinez to come out and fight, pulled out his gun and yelled, "Spic."

Miguel Casillas, Angel Martinez's uncle, asked the police what was happening. Officers Bernier and Wolferseder sprayed him in the face with mace. Officer Bernier then entered the house, kicked Olga Martinez in the stomach and sprayed mace in the faces of Olga and Virginia Martinez. The mace permeated the air harming five year old Cesar Martinez and six month old Jose Martinez. When told that a baby was in the house, Officer Bernier replied, "We don't give a [expletive]."

Officer Bernier grabbed Angel Martinez and threw him out onto the porch. As Angel Martinez was on the ground having a seizure,

---

1. The complaint does not indicate the date of the incident, however, according to the defendants, police records show that date to be May 30, 1993.

multiple officers beat him. Officer Wolferseder kicked him in the head, Officer Bernier spit in his face and one officer called him a "[expletive] spic." Angel Martinez was then dragged to the cruiser, handcuffed and kicked.

As the officers assaulted Angel Martinez, Miguel Casillas yelled "attaque" to indicate that Angel Martinez was having an epileptic seizure. The police stated that Mr. Casillas was disorderly, grabbed him and hit him on the back of the neck. Officers Wolferseder and Bernier threw Mr. Casillas onto the hood of the cruiser and hit him. Officer Tata then handcuffed him and threw him into a cruiser.

## II. Procedural Background

On August 22, 1996, the defendants removed the case to this Court. Shortly thereafter the defendants filed motions to dismiss. On December 5, 1996, the plaintiffs filed a motion to amend the complaint.

On July 7, 1997, the Magistrate Judge allowed the plaintiffs motion to amend and ordered that it be amended by July 31, 1997. He also recommended that the defendants' motions to dismiss be denied as moot in light of his disposition of the motion to amend. This Court accepted and adopted the Report and Recommendation on September 5, 1997.

On October 15, 1997, defendant Roddy renewed his motion to dismiss because the plaintiffs had not amended the complaint. On November 14, 1997, the plaintiffs filed a motion to amend the complaint and enclosed an amended complaint with the motion.

## III. Analysis

### A. Motion to Amend the Complaint

Roddy argues that the plaintiffs should not be allowed to amend the complaint because they failed to comply with the deadline imposed by the Magistrate Judge. The plaintiffs provide no explanation for why they failed to amend the complaint before that deadline.

Leave to amend pleadings shall be freely given when justice so requires. Fed.R.Civ.P. 15(a). Despite the plaintiffs' non-compliance with the imposed deadline, the delay has not prejudiced the defendants. The defendants have yet to even file an answer. This Court will, therefore, allow the motion to amend the complaint.

### B. Motion to Dismiss

#### 1. Mootness

This Court adopted the Magistrate Judge's recommendation that an allowance of a motion to amend moots a previously filed motion to dismiss. While that is generally true, Roddy's renewed motion to dismiss applies fully to the plaintiffs' amended complaint and, therefore, is not moot.

#### 2. Standard for a Motion to Dismiss

A motion to dismiss for failure to state a claim may be granted only if it appears, beyond doubt, that the plaintiffs can prove no facts in support of their claim that entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must accept all factual averments in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir.1992). The Court is required to look only to the allegations of the complaint and if under any theory they are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *Knight v. Mills*, 836 F.2d 659, 664 (1st Cir.1987).

#### 3. The § 1983 Claim (Count I)

The amended complaint alleges that the defendants, acting under color of state law, violated the plaintiffs' Fifth, Eighth, and Fourteenth Amendment rights. Defendant Roddy contends that the complaint does not state a § 1983 claim against him because it does not allege that 1) he was present at the scene, 2) he took any action with respect to the arrests, 3) he took any action at all, or 4) he had any contact with the plaintiffs. The plaintiffs argue that the complaint does state a § 1983 claim against Roddy because he is the final authority in a governmental unit and, therefore, is liable for a policy statement or officially adopted position.

The plaintiffs' argument, misstates the law. The cases the plaintiffs cite address the circumstances under which a municipality may be liable under § 1983. Those cases also make clear that *respondeat superior* is inapplicable in § 1983 cases. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Jacobs v. Paynter*, 727 F.Supp. 1212, 1216 (N.D.Ill.1989). The plaintiffs have not alleged that Roddy personally violated their federal or constitutional rights, therefore, they have not stated a § 1983 claim against him in his individual capacity.

### 4. The MCRA Claim (Count II)

■ The MCRA prohibits any person from interfering or attempting to interfere with the exercise of any rights secured by the constitution or laws of the United States or the Commonwealth by threats, intimidation, or coercion. M.G.L. c. 12, § 11I; *Willitts v. Roman Catholic Archbishop of Boston*, 411 Mass. 202, 210, 581 N.E.2d 475 (1991). The plaintiffs have not alleged that defendant Roddy personally engaged in any acts that constituted threats, intimidation or coercion, and, therefore, they have not stated a MCRA claim against him in his individual capacity.

### 5. The Negligence Claims (Counts III–VIII)

■ The plaintiffs assert several negligence claims against Roddy, pursuant to the Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, § 2. Under the MTCA, a public employee is not personally liable for personal injury caused by his negligent or wrongful act or omission while acting within the scope of his employment. Because Roddy's alleged negligent conduct occurred while he was acting within the scope of his employment, the negligence claims against him must be dismissed. M.G.L. c. 258, § 2; *Taplin v. Town of Chatham*, 390 Mass. 1, 2, 453 N.E.2d 421 (1983).

### 6. The Intentional Tort Claims (Counts IX–XI)

The amended complaint asserts three intentional torts against defendant Roddy: 1) intentional infliction of emotional distress, 2) assault and battery and 3) false arrest and imprisonment. Roddy's motion to dismiss addresses only the first of those claims. Roddy argues that the claim of intentional infliction of emotional distress must be dismissed because the acts and omissions he allegedly committed were not extreme and outrageous.

■ To prove a claim for intentional infliction of emotional distress, the plaintiffs must prove 1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct, 2) the conduct was extreme and outrageous, 3) the conduct caused the plaintiffs' emotional distress and 4) that emotional distress was severe. *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144–45, 355 N.E.2d 315 (1976). The complaint alleges that Roddy 1) hired violent and mentally unstable people, 2) failed to supervise them, 3) failed to develop and administer policies regarding excessive force and 4) failed to develop and administer policies regarding hiring and training. Drawing all reasonable inferences in favor of the plaintiffs, a reasonable jury could find that those acts and omissions were extreme and outrageous, particularly the hiring of violent and mentally unstable people.

## ORDER

For the foregoing reasons:

1) the motion of the plaintiffs to amend the complaint is **ALLOWED,**

2) the motion of the defendant Roddy to dismiss is disposed of as follows:

a) with respect to the § 1983 claim against him in his individual capacity: **ALLOWED,**

b) with respect to the MCRA claim against him in his individual capacity: **ALLOWED,**

c) with respect to the negligence claims against him in his individual capacity: **ALLOWED,** and

d) with respect to the claim of intentional infliction of emotional distress against him in his individual capacity: **DENIED.**

So ordered.