THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN SERGEY, Defendant-Appellant.

Second District   No. 2—84—0302

Opinion filed November 4, 1985.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton, and Peter C. Drummond, of Staunton (Robert J. Biderman, of State's Attorneys Appellate Service Commission, of Springfield, and Cynthia N. Schneider, of State's Attorneys Appellate Service Commission, of Elgin, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

After a bench trial defendant, John Sergey, was convicted of possessing a motor vehicle knowing it to have been stolen or converted (Ill. Rev. Stat. 1983, ch. 95½, par. 4—103(a)(1)) and driving under the influence of alcohol (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a)(2)). He was sentenced to 18 months' probation conditioned on serving six months in jail for the first offense and one year of probation conditioned upon serving three months in jail for the latter offense, the sentence to be concurrent.

On appeal defendant contends: (1) the State failed to prove him guilty of possessing a motor vehicle knowing it to have been stolen or

converted; (2) he was denied a fair trial because the court barred him from testifying about his intent when he possessed the car; and (3) the driving under the influence of alcohol charge was void for its failure to apprise defendant with particularity of the specific offense with which he was charged.

On September 18, 1983, defendant finished work at 6 p.m. at Carol Stream Amusements, where he had been working and residing for two weeks. He then began drinking beer with 10 other employees until approximately 1 a.m., when he decided to hitchhike to a tavern to buy more beer and then return. At that point, Sergey had consumed more than a 12-pack of beer.

Carol Stream Amusements, which is owned by Tim Magrid, sits on 18 acres of farmland and is used to store cars, trucks and carnival equipment. On September 18, there were 30 to 50 cars scattered about the premises; most of the vehicles were owned by Tim Magrid and most had keys in the ignition. The Mint Car Company, a car lot owned by Richard Schoenneman, is located "on the same property" as Carol Stream Amusements. Some of the cars owned by Schoenneman were parked among vehicles owned by Magrid.

Defendant testified he saw a 1977 Oldsmobile Cutlass with its keys in the ignition when he left to get more beer. Assuming it belonged to Magrid and believing Magrid would not mind if defendant borrowed it, Sergey drove the vehicle to a tavern where he stayed for 20 minutes and had a couple of beers before leaving with two 12-packs of beer. He then headed back to Carol Stream Amusements, but was stopped by police and arrested.

Officer Patrick Dempsey testified he observed the defendant speeding and weaving from one traffic lane to another at 2:50 a.m. Dempsey activated his emergency lights, but defendant ignored the police car until he was "edged over" by Dempsey and a police officer who had joined the pursuit. The officers testified that defendant stumbled, swayed, twice fell back against the Oldsmobile and smelled of alcohol. Defendant was arrested for "driving under the influence of alcohol" under "11—501(a)" and taken to the Roselle police station. At the station, defendant refused to take a breathalyzer test. All of the officers testified defendant could have reached Carol Stream on the route he was driving.

After the State had called two witnesses, but prior to the end of its case, the prosecution successfully moved over defense objection to amend the traffic ticket by adding subsection "(2)" to the statutory citation of "11—501(a)." The court found the amendment did not surprise or prejudice defendant and that it cured what was only a formal

defect.

At trial, defendant was not allowed to testify as to whether he knew the car was stolen or converted. However, he was allowed to testify that he had believed the Oldsmobile belonged to his employer; that he decided to borrow it; that he intended to return the vehicle after he purchased beer; that he did not have the intent to permanently deprive Richard Schoenneman or anyone else of the use and benefit of the car; that he believed his employer would not mind him borrowing the car for a short time because they "got along pretty good."

Defendant's claim that Magrid would have allowed him to use a vehicle was unrebutted. Also, it was stipulated that Richard Schoenneman would have testified that he was the owner of the vehicle, that it was worth more than $300 and that he later recovered the vehicle.

The court found defendant not guilty of theft because the State failed to prove intent to deprive the owner permanently of the car, for the evidence showed defendant was returning to Carol Stream Amusements with more beer when the police arrested him. Defendant was found guilty of driving under the influence of alcohol and of an offense charged which was premised upon his unauthorized possession of a car which he knowingly converted to his own use. Ill. Rev. Stat. 1983, ch. 95½, par. 4—103(a)(1).

■ Defendant's first claim of error is based on the court's finding that defendant knowingly "converted" the car when he used it to drive to a tavern to purchase beer. Section 4—103 of the Illinois Vehicle Code states in relevant part:

> "Offenses relating to motor vehicles and other vehicles—Felonies. (a) It is a violation of this Chapter for:
>
> (1) A person not entitled to the possession of a vehicle or part to receive, possess, conceal, sell or dispose of it, knowing it to have been stolen or converted ***." Ill. Rev. Stat. 1983, ch. 95½, par. 4—103(a)(1).

Defendant first argues his use of the car, although without express authorization, insufficiently interfered with the owner's rights to constitute conversion. Second, defendant contends that, given the nature of his use and his reasonable belief that he was merely borrowing his employer's car, he could not have known his conduct constituted conversion; therefore, a knowing conversion was not proved.

In considering these arguments, we must first determine what the term "converted" means in section 4—103(a)(1). The Illinois Vehicle Code does not define the term, and no court has yet interpreted it. Therefore; it is appropriate to consult the common law in the absence of a clear statutory meaning. (*Smith v. Roberts* (1977), 54 Ill. App. 3d

910, 916, 370 N.E.2d 271.) Words having well-defined common law meanings are interpreted to have the same meanings when used in statutes dealing with similar subject matter. *Balmes v. Hiab-Foco, A.B.* (1982), 105 Ill. App. 3d 572, 574-75, 434 N.E.2d 482, *appeal denied* (1982), 91 Ill. 2d 567; *Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 983, 326 N.E.2d 74.

Illinois case law generally defines civil conversion of a chattel as an unauthorized and wrongful assumption of the right to possession or ownership in the property which deprives the owner of his rights as owner. (*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 932, 419 N.E.2d 578; *Daniels v. Powell* (N.D. Ill. 1985), 604 F. Supp. 689, 696.) The measure of damages for conversion is the full value of the chattel, so the tort of conversion is usually confined to those major interferences with a chattel or the owner's rights therein which are so egregious as to merit what is, in essence, a forced judicial sale of the property. (Prosser & Keeton, The Law of Torts sec. 15, at 90 (5th ed. 1984); Restatement (Second) of Torts sec. 222A, and comments a and b thereto (1965); LaFave & Scott, Criminal Law sec. 89, at 645 (1972).) Both the Restatement and Prosser and Keeton's text agree that a brief unauthorized use of a car left undamaged by the defendant, such as his driving it only 10 miles, as opposed to a trip of hundreds of miles, should not be held to be a conversion. Restatement (Second) of Torts sec. 222A, comment d, illus. 21, at 435 (1965); Prosser & Keeton, The Law of Torts sec. 15, at 95-96, 101 (5th ed. 1984).

Illinois approved the modern law of conversion in *Johnson v. Weedman* (1843), 5 Ill. 495. There, plaintiff left his horse with the defendant for feeding and pasturing for a fee. While in his possession, defendant rode the horse 15 miles without plaintiff's permission. Although the horse died three hours later, the parties agreed the ride did not cause the death. On appeal defendant's attorney, A. Lincoln, ably argued that "[t]he riding of the horse was not such an abuse of the lawful possession as amounts to a conversion." (5 Ill. 495, 496.) The supreme court accepted this argument and affirmed the trial court's not-guilty verdict, concluding that the defendant's mere temporary use of plaintiff's horse without harm resulting from that use was insufficient to constitute conversion.

■ In the instant case there was not proof of damage to the car and the owner did recover it. Also, defendant had no intent to permanently deprive the owner, and it is unrefuted that the defendant's employer, whom defendant believed was the owner, would have given him permission to use the vehicle had he owned it. And, as was true of the

defendant in *Johnson v. Weedman,* defendant here only temporarily used the property without causing any harm to it. Based on these facts and the foregoing analysis of the nature of the tort of conversion, we cannot say that the legislature intended to punish conduct such as the defendant engaged in. Otherwise, every act of borrowing a friend's chattel without his express permission at that time would constitute a criminal conversion. Accordingly, we hold the defendant did not violate section 4—103 of the Illinois Vehicle Code and reverse his conviction thereon.

■ Defendant next complains he was denied a fair trial by the trial court when he was not allowed to answer the following question posed by his attorney: "Did you know the car was stolen or converted?" Though we need not address this contention in view of our disposition of the first issue presented, we note briefly that this claim is meritless.

In criminal cases where the intention, motive, or belief of the defendant is material to the issue of guilt, a defendant has a right to testify directly to that fact. (*People v. Biella* (1940), 374 Ill. 87, 89, 28 N.E.2d 111; *People v. Suerth* (1981), 97 Ill. App. 3d 1005, 1012, 423 N.E.2d 1185, *appeal denied* (1982), 85 Ill. 2d 573.) But where sufficient evidence supporting the defense is nevertheless presented at some point during the trial, although defendant was not allowed to testify directly as to his state of mind, then any error must be considered harmless. *People v. Owens* (1983), 116 Ill. App. 3d 51, 56-57, 451 N.E.2d 988; *People v. Limas* (1977), 45 Ill. App. 3d 643, 648, 359 N.E.2d 1194, *appeal denied* (1977), 66 Ill. 2d 627.

It is quite apparent from defendant's testimony as a whole that his defense was adequately presented. He was allowed to testify that he had believed the car belonged to his employer, that he only borrowed it believing his employer would not object, that he had no intent to permanently deprive anyone of the car, and that he was unaware of any possibility that the car was owned by someone other than his employer. Thus, defendant was clearly not denied a fair trial by the court's bar of his response to the question of knowing theft or conversion.

■ Defendant's final challenge is based on the State's amendment of the traffic ticket by adding subsection (2) to the statutory citation. Defendant argues that the amendment was improper, as it did not cure only a formal defect; instead, the charge was substantively defective and void because it failed to specifically apprise him whether he was charged with a violation of subsection (1) or of subsection (2) of section 11—501(a). That section provides:

"Driving while under the influence of alcohol, other drug, or combination thereof. (a) A person shall not drive or be in actual physical control of any vehicle within this State while:

1. The alcohol concentration in such person's blood or breath is 0.10 or more based on the definition of blood and breath units in section 11—501.2;

2. Under the influence of alcohol;

3. Under the influence of any other drug or combination of drugs to a degree which renders such person incapable of safely driving; or

4. Under the combined influence of alcohol and any other drug or drugs to a degree which renders such person incapable of safely driving." (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a).)

Though defendant fails to raise the issue, we note at the outset that this case presents us with a question quite different from those cases where an individual is charged only with "driving under the influence of liquor or drugs" and the court is required to reverse the conviction on grounds of uncertainty. (See *People v. Johnson* (1974), 16 Ill. App. 3d 819, 307 N.E.2d 159; *People v. Featherstone* (1974), 23 Ill. App. 3d 492, 318 N.E.2d 756; *People v. Utt* (1983), 122 Ill. App. 3d 272, 461 N.E.2d 463.) The problem here is more similar to that presented in *People v. Atwell* (1984), 129 Ill. App. 3d 724, 473 N.E.2d 89, where the court upheld a conviction of "driving under [the] influence" because any defect of certainty was cured by the specific statutory citation accompanying the charge. Similarly, the exact subsection was not cited here but that fault is cured by the language on the ticket charging the defendant in the exact terms of subsection (2).

It is well established that a criminal charge must set forth the name of the offense, its nature and elements and cite the statute defining it as an offense. (*People v. Smith* (1984), 99 Ill. 2d 467, 471, 459 N.E.2d 1357.) However, when a traffic citation informs a defendant of the offense he is charged with, failure to cite the precise subsection applicable is a technical defense of no avail if defendant is aware of the charge. (*People v. Ware* (1976), 41 Ill. App. 3d 902, 905-06, 355 N.E.2d 142.) The traffic citation charged the offense in the exact terms of subsection (2); it only left off any reference to that subsection. Moreover, it is difficult to see how defendant could have believed that the State might have charged him under subsection (1), when he had refused to take a breathalyzer test. These facts, together with the fact that there was no reference in the traffic citation to driving with a certain level of alcohol concentration in defendant's blood or breath, make it clear that defendant could not have been misled.

Since the failure to specify the applicable subsection was only a formal defect, the charge could be amended at any time, and the amendment was proper here. (See Ill. Rev. Stat. 1985, ch. 38, par. 111—5; *People v. Ward* (1981), 95 Ill. App. 3d 283, 287-88, 419 N.E.2d 1240.) In any event, even if the omission had rendered the charge uncertain, the State properly remedied the defect before defendant presented his case. See *People v. Kountkofsky* (1972), 8 Ill. App. 3d 725, 290 N.E.2d 307.

Accordingly, defendant's conviction and sentence for drinking under the influence of alcohol is affirmed and the conviction and sentence for possessing a vehicle knowing it to have been stolen or converted is reversed.

Judgment affirmed in part; reversed in part.

STROUSE and UNVERZAGT, JJ., concur.