THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD F. HEWITT, Defendant-Appellant.

Second District   No. 2—90—0574

Opinion filed April 26, 1991.

Joseph T. Bugos, of Donahue, Sowa & Bugos, of Lisle, for appellant.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, William L. Browers, of State's Attorneys Appellate Prosecutor's Office, and Kathleen V. Riccio, of counsel), for appellee.

PRESIDING JUSTICE REINHARD delivered the opinion of the court:

Following a bench trial conducted by the circuit court of Du Page County, defendant, Ronald F. Hewitt, was convicted of driving while under the influence of alcohol (DUI) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(2)), driving with a suspended driver's license (Ill. Rev. Stat. 1989, ch. 95½, par. 6—303(a)) and driving with only one headlight (Ill. Rev. Stat. 1989, ch. 95½, par. 12—201(b)). Defendant was fined a total of $250 for the three offenses and was also sentenced on the DUI offense to one year of probation conditioned on 14 days' imprisonment in the county jail and alcohol dependency treatment as determined by the probation department.

Defendant appeals his DUI conviction and presents the following issues for review: (1) whether the trial court properly allowed the State to amend its information after the close of its case; (2) whether the amended information was invalid because it was not reverified; and (3) whether defendant was proved guilty beyond a reasonable doubt of DUI.

Defendant filed a motion to suppress evidence but this motion is not part of the record. However, the transcript of the proceedings on the motion and some additional testimony at trial formed the basis of the evidence at the bench trial.

Kerry Florian, a co-worker of defendant, testified that he and defendant were working on a carpentry job in Naperville, Illinois, from approximately 4 p.m. to 8 p.m. on June 14, 1989. After leaving work at about 8 p.m., the two proceeded to a 7-Eleven store and picked up a six-pack of beer. They then went to the shop of a friend, Ken Lore. During this trip of 13 to 14 miles, Florian drove behind defendant, who was driving a Chevy pickup truck. Florian testified that the spring on the truck was broken at the time he and defendant left the jobsite in Naperville.

Once at the garage, the three men each drank two cans from the six-pack of beer. Florian testified that defendant had not consumed any alcoholic beverage before this. Shortly before 10 p.m., Florian and defendant left, and Florian agreed to follow defendant most of

the five or six miles to defendant's home. Florian testified that, because of the broken spring, defendant's truck leaned to one side. Florian did not observe defendant commit any traffic violations. Florian followed defendant as far as the intersection of 63rd and Cass, which is near defendant's home, and he did not see defendant being pulled over by the police.

Defendant testified that he showed up at the Naperville jobsite at about 7 a.m. and worked until 8 p.m. He stated that he consumed no alcoholic beverages during this period. Defendant further stated that he, Ken Lore and Florian split a six-pack of beer at Lore's garage. Defendant's 1979 Chevy pickup truck, which had 130,000 miles on it, had broken a rear spring at about 2 or 2:30 p.m. on the day in question. Defendant estimated that the truck leaned about 8 or 10 inches as a result. Defendant testified that, as he drove home with Florian following him, he did not violate any traffic laws.

After Florian left him, and about two or three houses from his home, defendant was stopped by the police. He got out of the truck but then leaned back in to place his glasses on the dashboard. Defendant did not have problems with his balance, but his knees sometimes "get stiff." The police informed him that one of his truck's headlights was out. When asked, he refused to take a field sobriety test. Defendant refused to take the test because he does not "have good balance." Defendant admitted that he told the police, "we had a couple of beers," and that "[i]t's been a late day. All I want to do is go home and go to bed." Defendant was then arrested by the police officers.

Officer Ross Brenza of the Village of Westmont police testified that, at approximately 10:30 p.m. on June 14, 1989, he observed a pickup truck with only one headlight turning onto 59th Street. As Officer Brenza followed the truck westbound on 59th Street, he noticed the truck weaving to within inches of the right-hand curb and back over the center line into the eastbound portion of the road. He estimated that the vehicle weaved in this manner approximately four to seven times.

Officer Brenza activated his emergency lights and spotlight, and, after proceeding another two blocks, the truck pulled over to the side of the road. Officer Brenza exited his car at the same time the driver of the truck exited his vehicle. The driver "appeared to be hanging onto the driver's door for support" and, after letting go of the door, "fell against the truck." As Officer Brenza began speaking with the driver, he observed that the driver's speech was slurred, his eyes were "glossy [sic] and bloodshot," and he had a strong odor of alcohol on his breath. The driver was swaying and staggering. When Officer

Brenza asked the driver to perform a field sobriety test, he refused, stating that he "had a bad night and he just wanted to go home." The driver admitted having a few beers.

Officer Brenza ran a check on the driver's license and found that it was suspended. Officer Brenza then advised the driver that he was under arrest for DUI and driving with a suspended license. The driver refused to take a breathalyzer test. Officer Brenza opined that the driver, whom he identified as defendant, was under the influence of alcohol at the time of his arrest. On cross-examination, Officer Brenza testified that 59th Street is marked by a center line but is not a laned roadway. After being arrested and taken to the police station, defendant told Officer Brenza that he had taken Sinutab sometime in the preceding six hours. Defendant never complained about problems with his knees, his eyesight or the spring on his truck.

Officer Randy King of the Village of Westmont police testified that, as he rode in the passenger seat of Officer Brenza's squad car on the night of June 14, 1989, he observed defendant's truck weaving between the center line and the curb. As defendant exited his truck after being pulled over, he leaned on the door for support and fell against the truck after taking a step. Officer King never saw defendant reach into the cab of the truck. Defendant was staggering and swaying in a circular manner, and he never complained of physical problems or problems with the truck.

After being placed under arrest, defendant gave Officer King permission to drive his truck to his house. Officer King testified that, although the truck had a "little bit of tilt," he had no problem driving it. The odor of alcohol on defendant's breath was "strong," although Officer King did not smell alcohol on defendant's breath until they were in the squad car because he was not face-to-face with defendant until that time. Officer King was of the opinion that defendant was under the influence of alcohol.

After the State rested, defendant asked the court to enter a directed finding of not guilty on the charge of DUI. Defendant argued that he had been charged in the information with a violation of section 11—501(a)(1) of the Illinois Vehicle Code (Vehicle Code), which requires the State to prove defendant had a blood-alcohol concentration of .10 or more. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(1).) The assistant State's Attorney asked leave to amend the statutory section alleged in the information to reflect the statutory provision of "under impairment," stating:

"MR. ESTES [assistant State's Attorney]: Judge, at this time, I would be moving to amend the information to be under 11—501.1. It would be (a)."

Defense counsel responded:

"MR. BUGOS [defense counsel]: *** Mr. Estes wants to fill in new information that would correct the error by the State. This is substantive. This isn't merely formal. The document, as it stands now, is sufficient to charge a violation of 11—501(a)(1). The only way to make it (a)(2) is to amend. They never made a motion prior to trial."

The prosecutor subsequently stated that "[i]t is clear that the People are moving to amend to that section of the information to be under impairment not the per se, under 11—501(a)(1)." The trial court reserved its ruling on the State's motion to amend.

The parties then stipulated to the admission of the transcripts of the testimony of Florian and defendant from the hearing on defendant's motion to suppress. Defendant also testified for the purpose of identifying photographs of his pickup truck. The court took the case under advisement.

On March 7, 1990, the trial court heard further argument on the issue of amending the information. The court found that the defect in the information was formal, not substantive, and was more in the nature of a scrivener's error. The trial court granted the State leave to amend the information, although no written amendment appears on the face of the information, and denied defendant's motion for a directed finding.

On March 13, 1990, the court found defendant guilty of all three offenses charged. On April 5, 1990, defendant filed a motion to reconsider or, in the alternative, for a new trial. Defendant presented the motion at a hearing on April 25, 1990, at which time he also indicated he was presenting a motion in arrest of judgment. The record contains a motion in arrest of judgment which was not filed until May 2, 1990.

The motion for reconsideration contended that the State was improperly allowed to amend the information and that the evidence was insufficient to prove defendant guilty beyond a reasonable doubt of DUI. The motion in arrest of judgment contended that, although the "State was allowed to amend its information to read a violation of section 11—501(a) instead of 11—501(a)(1) after it had rested," there was no reverification of the complaint as required by section 111—3 of the Code of Criminal Procedure of 1963 (Code of Criminal Proce-

dure) (Ill. Rev. Stat. 1989, ch. 38, par. 111—3). The trial court denied both motions, and defendant now appeals.

Defendant's first contention on appeal is that the trial court erred in denying his motion for a directed finding at the close of the State's case. This contention is, in turn, comprised of two separate elements: (1) the propriety of allowing the State to amend the information; and (2) the effectiveness of the State's purported amendment.

▊ Defendant contends that section 111—5 of the Code of Criminal Procedure allows the State to correct formal, but not substantive, defects in the charging instrument. Section 111—5 provides, in pertinent part, as follows:

> "§111—5. Formal Defects in a Charge. An indictment, information or complaint which charges the commission of an offense in accordance with Section 111—3 of this Code shall not be dismissed and may be amended on motion by the State's Attorney or defendant at any time because of formal defects, including:
>
> (a) Any miswriting, misspelling or grammatical error." (Ill. Rev. Stat. 1989, ch. 38, par. 111—5.)

Defendant contends that the defect here was substantive and not formal.

We believe this court's decision in *People v. Sergey* (1985), 137 Ill. App. 3d 971, 485 N.E.2d 506, controls our resolution of the issue here. In *Sergey*, the defendant, who refused to take a breathalyzer test, was issued a traffic ticket for DUI under section 11—501(a) of the Vehicle Code. After the State had called two witnesses, but prior to the end of its case, the prosecution successfully moved over defense objection to amend the traffic ticket by adding subsection (2) to the statutory citation of section 11—501(a). (*Sergey*, 137 Ill. App. 3d at 973, 485 N.E.2d at 507-08.) This court held that, where a traffic citation informs a defendant of the offense with which he is charged, the failure to cite the precise subsection applicable is a technical defect which is of no avail if defendant is aware of the charge. Noting that the traffic citation "charged the offense in the exact terms" of section 11—501(a)(2) and did not make any reference to blood-alcohol content, the court held that defendant could not have been misled and that amendment was proper. *Sergey*, 137 Ill. App. 3d at 977-78, 485 N.E.2d at 510.

▊ Here, too, the allegation in the information that defendant, "WAS DRIVING OR IN ACTUAL PHYSICAL CONTROL OF A MOTOR VEHICLE WITHIN THE STATE OF ILLINOIS WHILE UNDER THE INFLUENCE OF ALCOHOL," is sufficient to apprise him

of a prosecution under section 11—501(a)(2). As was the case in *Sergey*, there is no reference to blood-alcohol content, and "it is difficult to see how defendant could have believed that the State might have charged him under subsection (1), when he had refused to take a breathalyzer test." (*Sergey*, 137 Ill. App. 3d at 977, 485 N.E.2d at 510.) Thus, the trial court properly allowed the State to amend the information to correct this formal defect. *Sergey*, 137 Ill. App. 3d at 978, 485 N.E.2d at 510.

Defendant further contends that the State's attempt to amend the information was ineffective. Although the State never filed a written amendment to the information, the prosecutor stated orally that he was "moving to amend the information to be under 11—501.1. It would be (a)." Defendant correctly notes that section 11—501.1 of the Vehicle Code is the implied-consent provision (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1(a)) and does not even embody an offense. The State maintains, however, that the record as a whole, including the prosecutor's stated intention to charge defendant "under impairment" and not under section 11—501(a)(1), clearly indicates the State's intention to amend the information to charge defendant under the proper provision, section 11—501(a)(2).

■ We note that defendant did not raise before the trial court any issue regarding the *substance* of the State's amendment to the information, either during argument on the propriety of the amendment or in his post-trial motions. Both parties proceeded below as if the amendment sought was the proper one. The citation to an incorrect statutory provision is not necessarily fatal, and reversal is not required unless the citation is so misleading that defendant could have been prejudiced. (*People v. Ryan* (1987), 117 Ill. 2d 28, 37, 509 N.E.2d 1001.) This is especially true where, as here, the alleged error is raised for the first time on appeal. *Cf. People v. Pujoue* (1975), 61 Ill. 2d 335, 339, 335 N.E.2d 437.

It is clear that defendant was not prejudiced. Although defendant argued that the State should not have been allowed to amend the information, it is nonetheless clear that defendant proceeded under the assumption that the State sought to amend the information to the correct provision, section 11—501(a)(2). When the State first sought the amendment, defense counsel stated that the original information "is sufficient to charge a violation of 11—501(a)(1). The only way to make it *(a)(2)* is to amend." (Emphasis added.) Given that defendant's own position was based on the assumption that the State sought to amend the information to section 11—501(a)(2), it is impossible to find prejudice in the State's failure to name the proper section.

■ Defendant's next argument is that the amendment to the information was a substantive change and required reverification of the information. (See *People v. Troutt* (1977), 51 Ill. App. 3d 656, 366 N.E.2d 370.) As we have already concluded, however, the miscited statutory provision in the original information was merely a formal defect. (*Sergey*, 137 Ill. App. 3d at 978, 485 N.E.2d at 510.) Accordingly, no reverification was required. *Troutt*, 51 Ill. App. 3d at 661, 366 N.E.2d at 373-74.

■ Finally, defendant contends that the evidence presented at trial was insufficient to prove him guilty beyond a reasonable doubt of DUI. Defendant contends that the evidence below "is consistent with someone driving a truck with mechanical problems after a long and physically exhausting work day."

In assessing whether the evidence against a defendant was sufficient to prove guilt beyond a reasonable doubt, the relevant question on review is whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Furby* (1990), 138 Ill. 2d 434, 455, 563 N.E.2d 421.) Here, the evidence viewed in the light most favorable to the State shows that defendant's truck weaved between the center line to the curb four to seven times. Defendant stumbled getting out of his truck and leaned against it for balance. Defendant swayed in a circular manner, and Officer Brenza testified that defendant's speech was slurred, his eyes were "glossy [*sic*] and bloodshot," and his breath smelled of alcohol. Both of the experienced police officers were of the opinion that defendant was under the influence of alcohol.

We believe the evidence was sufficient to permit a rational trier of fact to have found defendant guilty beyond a reasonable doubt of DUI. While defendant presented testimony to show that his actions did not reflect intoxication, the assessment of the credibility of witnesses and the resolution of factual disputes are properly made by the finder of fact. (*People v. Hendricks* (1990), 137 Ill. 2d 31, 65, 560 N.E.2d 611.) The finder of fact is not required to accept any possible explanation compatible with defendant's innocence and elevate it to the status of reasonable doubt. *People v. Herrett* (1990), 137 Ill. 2d 195, 206, 561 N.E.2d 1.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and UNVERZAGT, JJ., concur.